J-A05033-22

2022 PA Super 72

KIMBERLY A. SNYDER : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
ROBERT A. SNYDER, JR. :
:
Appellant : No. 326 MDA 2021

Appeal from the Decree Entered March 3, 2021
In the Court of Common Pleas of Northumberland County Civil Division at
No(s): CV-2015-00290

BEFORE: OLSON, J., KUNSELMAN, J., and STEVENS, P.J.E.*

OPINION BY STEVENS, P.J.E.: **FILED APRIL 20, 2022**

Robert A. Snyder, Jr. ("Husband") appeals from the March 3, 2021, divorce decree entered in the Court of Common Pleas of Northumberland County, which, *inter alia*, provided for the equitable distribution of the marital assets of Husband and Kimberly A. Snyder ("Wife"). After a careful review, we affirm, in part, and vacate and remand, in part. Specifically, we affirm the decree in all respects, except we vacate the portion of the equitable distribution order which double counted certain assets associated with RAS BAR, Inc., and remand for further proceedings consistent with this decision.

The relevant facts and procedural history are as follows: The parties were married on May 13, 1995, and they have one daughter, who is no longer

_____

* Former Justice specially assigned to the Superior Court.

a minor.[1] On February 13, 2015, Wife filed a complaint in divorce seeking equitable distribution of the marital property, and she filed a praecipe for *lis pendens* concerning various real estate properties. On August 25, 2015, Husband filed an answer with a counterclaim seeking, *inter alia*, alimony and alimony *pendente lite* ("APL"), and Wife filed an answer on September 4, 2015.

On March 16, 2017, Wife filed a motion for discovery, and on June 1, 2017, the trial court directed Husband to sign an authorization to release M&T Bank records to Wife. The master was appointed on May 14, 2018, for purposes of the divorce and economic claims. Regarding the divorce, the parties executed affidavits of consent and waivers of notice on October 25, 2019.

Regarding the economic claims, on January 5, 2018, Wife filed an inventory, income, and expense statement, which she amended on October 1, 2019. On June 18, 2018, she filed a pretrial statement, which she amended on October 15, 2019. Husband filed a pretrial statement on June 25, 2018. However, despite being ordered to do so, he failed to file an inventory, income, and expense statement.[2] He also failed to submit the information pertaining

_____

[1] Husband has an adult son, Christopher Allen Snyder, from a separate relationship.

[2] The Rules of our Supreme Court require a party to list his or her marital and nonmarital assets on the inventory, marital asset summary, and pretrial

*(Footnote Continued Next Page)*

thereto as an exhibit to or as a chart within his pretrial statement in accordance with Pa.R.C.P. 1920.33(b).

The matter proceeded to a hearing before the master. At the hearing, the parties stipulated that, from February 11, 2015, to March 24, 2017, Wife had exclusive possession of the property where the parties resided during their marriage ("marital residence"), and Husband gained possession thereafter. They further stipulated that Husband's savings account balance at the date of separation was $7,355.44; the marital property was to be distributed fifty-fifty to each party; and the date of separation was February 5, 2015.

At the conclusion of the hearing, the master made extensive factual findings, which the trial court subsequently adopted and incorporated into its decision. Specifically, the master found:

> In May of 1993, [Husband] created a corporation, RAS BAR, Inc. [("RAS BAR" or "RAS BAR, Inc.")], wherein he was the sole shareholder and sole officer with the stock valued at one cent per share. Husband owned 100% of the stock to RAS BAR prior to the date of marriage….[B]ased upon the lack of information provided by Husband, the value of this stock was a mere $0.01 per share as no proof was presented that the stock had increased from the date of creation until the date of marriage.
>
> In July of 1994, [Husband], a single man, purchased the soon to be "marital residence" involving two tracts on East Drive [in] Sunbury for $89,900.00, and [he] took out a mortgage in the amount of $71,820.00 on both tracts 328-330 East Drive, hereinafter referred to as First Mortgage.
>
> On May 13, 1995, the parties were married. The parties did substantial work on the "marital residence." Six months after

___

statement. Pa.R.C.P. 1920.33. **See Kozel v. Kozel**, 97 A.3d 767 (Pa.Super. 2014).

- 3 -

marriage, in November [of] 1995, Husband took out a Second Mortgage through First National Trust Bank for $35,064.50 on the [marital residence]. Husband testified [he took out the Second Mortgage] to open Perk A Deli at 328 Market Street [in] Lewisburg.

In March of 1998, the parties refinanced with First National Trust Bank, paying off the Second Mortgage balance of $21,458.67, and a payment to ENTB-Rest [in the] amount of $18,602.87, as well as 1997 delinquent taxes. Husband testified that this was the restaurant loan for Perk A Deli. Prior to refinancing, a deed of correction was filed identifying the precise [marital] residence as 330 East Drive. Both Husband and Wife signed the Note for $111,361.00.

***

On September 27, 2004, a deed was transferred during the marriage for the real estate at 700-706 Market Street [in] Sunbury, known as "the Peppermint Lounge" property, to [Husband, as] a married person. Husband testified he paid $310,000.00 for the real estate and liquor license pursuant to an Installment Sales agreement. No evidence of the sale of the liquor license was ever produced by Husband, and his testimony does not even state whether the license was in his name or RAS BAR, but [his testimony indicates] that the financing started in July of 1992, at an interest rate of six to eight percent over a ten-year agreement[.] RAS BAR was not incorporated until May of 1993.

On February 20, 2009, the Peppermint Lounge…burnt down. The insurance proceeds totaled $790,000.00 according to Husband's testimony; however, the insurance checks total $809,720.00, which [was used to pay] off the mortgage on the marital residence, satisfaction filed [on] April 28, 2009.

Neither party was able to state with certainty where the insurance proceeds went; however, Husband had complete control over the money and claimed most of it went to remodeling the marital residence. In fact, Husband's Answer to Interrogatories claims $491,000.00 was spent on the new addition. Wife repeatedly asked for proof of where the money went and, even at the hearing, Husband presented not one single check or invoice for the renovations.[5]

---

5 The parties agree that these renovations occurred and were extensive; however, Wife has never known or seen how much the renovations actually cost.

On March 26, 2010, the real estate known as the Peppermint Lounge was sold to James and Debra Eister for one dollar ($1.00) but assigned a 1% transfer tax of $706.14, which translates to a value of [just over $70,600.00]. Husband testified he sold the property for $1.00 because of the clean-up and demolition involved and the deal was done by handshake. Both Husband and Wife signed the deed, which lists the sale value for each tract at one dollar. Mr. James R. Eister testified that he purchased the real estate, formerly known as the Peppermint Lounge, for one dollar for each parcel after discussion with Husband about three or four days after the fire in the bar area, [the] part that didn't burn down. The east side was totally destroyed[,] and the bar area was semi-destroyed. Mr. Eister testified he did not give $70,000.00 for the building[,] but he did have to use the county tax assessor valuation for taxes….[H]e paid between $50,000.00 and $60,000.00 for demolition….For some reason, Husband was writing checks to several individuals…from his RAS BAR account for "clean-up" or "repair" [or] "rental" beginning [on] April 23, 2009, through August 14, 2009.

\*\*\*

On July 26, 2010, a deed was transferred from the IRS to Husband for the property at 448½ Market Street [in] Sunbury, known as the "Squeeze-In", for a purchase price of $69,000.00. Husband's Answer to Interrogatories valued the real estate at $75,000.00. Neither party obtained a real estate appraisal, as such, the value provided by Husband of the real estate shall be used by the master.

\*\*\*

Husband and Wife kept separate bank accounts throughout the marriage. The parties separated on February 5, 2015. Husband resided at Northumberland County Jail for a lengthy period of time since date of separation. The parties agreed to the entry of a Protection from Abuse Order ("PFA") and providing Wife and their daughter exclusive possession of the [marital residence]. After Husband's release, he resided at the apartment located at 448½-450 Market Street [in] Sunbury, a/k/a Squeeze-In. Husband sought to modify the PFA and the court granted him the ability to resume possession of the [marital residence] but required him to post a bond in the amount of $100,000.00.

In March of 2016, Husband executed several transactions to move the liquor license, which was held in safekeeping and about to be lost if not transferred to an existing operating premise.[9]

9 Husband's son used the parties' American Express account card to begin the process with the Pennsylvania Liquor Control Board ("PALCB"). The licensee was RAS BAR, Inc., DBA Peppermint Lounge at 700 Market Street [in] Sunbury and requested to be transferred to Christopher Allen Snyder, t/a Squeeze-In at 448½ Market Street [in] Sunbury. Husband and son submitted a retail space lease contract to lease the "Squeeze-In" real estate for $1.00 per year on March 1, 2016. The documents also include stock transfers [of] 100% stock ownership of RAS BAR, Inc. from Husband to son, and a check for the license transfer by RAS BAR, Inc. to PALCB on March 23, 2016. A stock purchase agreement [was] also created and signed on the same date, March 1, 2016, for sale of one thousand shares of common stock for a total price of $10.00. The license was approved by the PALCB in April of 2018 and listed as active with a licensee of RAS BAR, Inc. at 448½ Market Street [in] Sunbury. The Corporate Record Book for RAS BAR, Inc., now lists a principal place of business as 448½-450 Market Street [in] Sunbury[.]

Husband finally re-created the corporate records, which he claims were lost in the Peppermint Lounge fire, which if the business was operating correctly, should have been done over the past five years while operating RAS BAR, Inc., t/a Pop Snyder's. Husband, or his agent, also withdrew the remaining equity on [a home equity line of credit],[3] despite an order for non-dissipation of marital assets and freezing of the line of credit.

Master's Report and Recommendation, filed 5/4/20, at 4-9 (footnotes omitted) (citations to record omitted) (footnote added).

After consideration of the evidence, the master concluded the real estate located at 330 East Drive in Sunbury, which later became the marital residence, was purchased by Husband prior to the marriage and the deed

---

3 Husband testified that, on February 20, 2013, which was prior to the parties' separation, he obtained a home equity line of credit on the marital residence with a maximum amount of $150,000.00. Husband testified this was his alone, as Wife did not participate. Husband did not testify as to what purpose he used the money. When the parties separated, the balance on the home equity line of credit was $86,000.00, and at the end of 2017, the outstanding principal balance was $149,873.04.

remained in his individual name throughout the marriage. *Id.* at 4. Thus, the master concluded the home was premarital property, but Wife was entitled to a share of the increase in value of the real estate during the parties' marriage. *Id.* The master further concluded Wife was not entitled to the fair rental value of non-marital property. *Id.*

Regarding RAS BAR, Inc., the master concluded Husband created the corporation prior to the parties' marriage. Accordingly, the master found the business was premarital, but that Wife was entitled to a share of the increase in value of the corporation during the parties' marriage. *Id.*

Based on the evidence presented at the hearing, and the parties' stipulation to a fifty-fifty split of marital property, the master set forth a detailed proposed plan of distribution, which took into account the marital assets and the increase/decrease in value of non-marital assets.

Thus, the master found the following to be assets: (1) real estate at 330 East Drive in Sunbury (non-marital, only increase in value is marital)-value of $233,690.66-Husband; (2) real estate at 448½-450 Market Street in Sunbury-(marital)-value of $75,000.00-Husband; (3) 2008 Lincoln Mark LT-value of $20,050.00-Husband; (4) 1995 Mercedes SL 500-value of $7,975.00-Husband; (5) 2013 Nissan Altima-trade-in value of $2,000.00-Wife; (6) 1989 28-Foot Rinker Festavee 250 boat-value of $9,250.00-Husband; (7) Jet ski and trailer-value of $2,000.00-Husband; (8) Swineford RAS BAR small business checking account-value of $7,355.44-Husband; (9) M&T direct

checking account-value of $549.13-Wife; (10) M&T Advanced Business checking account-value of $3,102.61-Husband; (11) M&T bank checking account-value of $356.60-Husband; (12) M&T Rel. Savings account-value of $341.24-Husband; (13) M&T Com. Savings account-value of $0.00-Husband; (14) Northumberland National Savings account-value of $0.00-Wife; (15) contents of safe deposit boxes-value of $0.00-Wife; (16) Prudential Whole Life Insurance policy-value of $0.00-Husband; (17) Wife's clothing and personal items-value of $2,000.00-Wife; (18) furniture and furnishings for Husband's New York apartment-value of $3,257.84-Husband; (19) household furnishings and property-value of $22,776.00-Husband; (20) RAS BAR, Inc.—Squeeze-In/Dip In/Duck In-value of $449,012.87-Husband; (21) RAS BAR, Inc. liquor license-value of $25,000.000-Husband. ***See*** Master's Report and Recommendation, filed 5/4/20, at 36-37.

Accordingly, the master concluded the marital estate had assets of $863,727.39 with $4,549.13 representing the value of Wife's assets and $859,178.26 representing the value of Husband's assets. ***Id.*** at 37.

The master found the following sole debt of the marital estate: (1) M&T Bank Line of Credit-debt of $86,000.00-Husband. ***Id.***

In performing the relevant calculations, the master concluded the total assets, minus debts, of the marital estate equaled the following: $777,727.39 with Wife having $4,549.13 in total assets and Husband having $773,178.26 in total assets. ***Id.*** at 38. At an equitable distribution rate of fifty percent for

each party, the master concluded each party was entitled to a distribution equaling $388,863.69. *Id.* Further, the master concluded Wife was entitled to her fair rental share of RAS BAR property at 448½ Market Street, which totaled $36,416.67.

The master directed the following:

Husband shall retain all debts and assets with a value listed [with his name], and Wife shall retain all debts and assets with a value listed [with her name]. Husband shall make a lump sum payment to Wife for her fifty percent share of the marital estate in the amount of $420,731.23, which represents Wife's share of the marital portion, $384,314.56, plus Wife's share of the fair rental value for the joint real estate, post separation, after Husband no longer resided there, $36,416.67.

The master notes that there remains equity in 330 East Drive, which Husband would be able to refinance or seek a second mortgage, as well as Husband owns two other pieces of real estate, which are non-marital property, free and clear, as well as the 448½-450 Market Street property that could be mortgaged. In addition, the business itself could obtain a loan; however, a business appraisal would be required.

*Id.*

Husband filed a timely exception to the master's report and recommendation, and Wife filed a response. By decree filed on March 3, 2021, the trial court declared Wife and Husband were divorced, and Husband's exceptions to the master's report and recommendation were denied.

Regarding the equitable distribution issues, the trial court specifically adopted and relied upon the master's factual findings and reasoning. Specifically, the trial court indicated "[t]he master's valuations, legal reasoning, determinations of credibility, and conclusions are sound. The

master's report shall become the Order of Distribution." Trial Court Opinion, filed 3/3/21, at 1.

Husband filed a timely notice of appeal, and the trial court directed Husband to file a Pa.R.A.P. 1925(b) statement. Husband timely complied, and on April 12, 2021, the trial court filed a brief Rule 1925(a) opinion indicating it was relying on the master's report, as well as the trial court's previous opinion.

On appeal, Husband sets forth the following issues in his "Statement of Questions Presented" (verbatim):

I.   Whether the trial court erred in finding Wife competent to testify as to the value of the RAS BAR assets.

II.  Whether the trial court erred in finding the testimony of Wife as to the value of the RAS BAR assets credible and in adopting Wife's proposed method of valuation.

III. Whether the trial court erred in double-valuing the RAS BAR assets by assigning them values under both the gross income and a market value approach.

IV.  Whether the trial court erred in assigning values to certain personal property including an American Express Account, a 2008 Lincoln Mark LT, a 1995 Mercedes-Benz SL 500, a Rinker boat, and various apartment furnishings.

V.   Whether the trial court erred in determining the net value of the marital estate and ordering a cash distribution to Wife rather than distribution in kind.

Husband's Brief at 4 (unnecessary capitalization omitted).

Preliminarily, we note that, "[a]lthough the master's report is entitled to great weight, the final responsibility of making the distribution rests with the [trial] court." **Trembach v. Trembach**, 615 A.2d 33, 36 (Pa.Super. 1992).

- 10 -

A trial court has broad discretion when fashioning an award of equitable distribution. ***Dalrymple v. Kilishek***, 920 A.2d 1275, 1280 (Pa.Super. 2007). Our standard of review when assessing the propriety of an order effectuating the equitable distribution of marital property is "whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure." ***Smith v. Smith***, 904 A.2d 15, 19 (Pa.Super. 2006) (citation omitted). We do not lightly find an abuse of discretion, which requires a showing of clear and convincing evidence. ***Id.*** This Court will not find an "abuse of discretion" unless the law has been "overridden or misapplied or the judgment exercised" was "manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence in the certified record." ***Wang v. Feng***, 888 A.2d 882, 887 (Pa.Super. 2005). In determining the propriety of an equitable distribution award, courts must consider the distribution scheme as a whole. ***Id.*** "[W]e measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights." ***Schenk v. Schenk***, 880 A.2d 633, 639 (Pa.Super. 2005) (citation omitted).

***Biese v. Biese***, 979 A.2d 892, 895 (Pa.Super. 2009).[4]

_____

[4] Factors relevant to the equitable division of marital property are set forth in 23 Pa.C.S.A. § 3502(a) and include the following:

> [T]he trial court must consider the length of the marriage; any prior marriages; age, health, skills, and employability of the parties; sources of income and needs of the parties; contributions of one party to the increased earning power of the other party; opportunity of each party for future acquisitions of assets or income; contribution or dissipation of each party to the acquisition, depreciation, or appreciation of marital property; value of each party's separate property; standard of living established during the marriage; economic circumstances of each party; and, whether the party will be serving as custodian of any dependent children.

***Mercatell v. Mercatell***, 854 A.2d 609, 611 (Pa.Super. 2004).

- 11 -

Husband's first, second, and third issues are intertwined and relate to the trial court's valuation of RAS BAR and the assets associated therewith. In this regard, Husband contends he is specifically challenging the trial court's valuation of the following:

1. Squeeze-In Property-$75,000.00
2. RAS BAR checking-$7,335.44[5]
3. RAS BAR business-$449,012.87
4. RAS BAR Liquor License-$25,000
5. RAS BAR Rental Value-$36,416.67

Husband's Brief at 10 (citations to master's report and recommendation omitted) (footnote added).

Husband specifically contends that, in establishing a value for these assets, the trial court erred by:

1. Finding Wife competent to testify as to the value of the assets.

2. Assuming, *arguendo*, that Wife was competent to testify, finding Wife's testimony to be credible and adopting Wife's proposed method of valuation.

3. Double-valuing the RAS BAR assets by assigning value under both gross income and market-value approaches.

Husband's Brief at 10.

Husband first argues the trial court erred in accepting Wife's testimony as to the value of RAS BAR and its assets. Specifically, he initially contends

---

[5] Husband's stated value of $7,335.44 appears to be a typographical error. The master indicated the RAS BAR Swineford Business Checking account had a value of $7,355.44.

that Wife was "incompetent" to testify regarding the valuation of RAS BAR and its assets since she was not an owner or involved in the business. He next suggests that, assuming, *arguendo*, she was competent to testify on this issue, her testimony was incredible such that the trial court erred in adopting her proposed valuations.

Husband further challenges the method used by the trial court in evaluating the RAS BAR business and its assets. He specifically contends:

> [T]he trial court was obliged to disregard as inadmissible Wife's testimony as to the value of RAS BAR, Inc., the liquor license held by it, the Squeeze-In property, and the enterprises conducted therein. Accordingly, the only evidence of value is that submitted by Husband and the trial court should have adopted his valuations.

Husband's Brief at 13-14.

In reviewing Husband's issues, we note the following well-established legal principles:

> "The Divorce Code[6] does not specify a particular method of valuing assets." **Smith**, 904 A.2d at 21. Thus, "[t]he trial court must exercise discretion and rely on the estimates, inventories, records of purchase prices, and appraisals submitted by both parties." **Id.** at 21-22. When "determining the value of marital property, the court is free to accept all, part or none of the evidence as to the true and correct value of the property." **Schenk**, 880 A.2d at 642 (citation omitted). "Where the evidence offered by one party is uncontradicted, the court may adopt this value even [though] the resulting valuation would have been different if more accurate and complete evidence had been presented." **Id.** "A trial court does not abuse its discretion in adopting the only valuation submitted by the parties." **Id.**

---

[6] **See** 23 Pa.C.S.A. §§ 3101-3333.

***Childress v. Bogosian***, 12 A.3d 448, 456 (Pa.Super. 2011) (quoting ***Biese***,

979 A.2d at 897) (footnoted added).

As it relates to RAS BAR, Inc. as a business entity, the master indicated

the following:

> Husband [was] less than credible in many aspects concerning property ownership, title, and value and simply self-serving. The master has used Wife's inventory and appraisal, records of receipts and purchases, bank records, and business financial tax returns in determining the value of the marital property.
>
> In addition, Wife's testimony concerning the value of the business based upon the gross income-based approach is an acceptable method of valuing businesses, [***See Gaydos v. Gaydos***, 693 A.2d 1368 (Pa.Super. 1997) (*en banc*)], [which the master] found to be credible. [Husband] objects to her testimony concerning the values of the RAS BAR, Inc. businesses and liquor license[, however, the court finds no merit to his objection].
>
> ***
>
> The accepted rule in Pennsylvania is that a corporation shall be regarded as an independent entity even if its stock is owned entirely by one person. ***College Watercolor Group, Inc. v. William H. Newbauer, Inc.***, 468 Pa. 103, 360 A.2d 200 (1976). Under Pennsylvania law, ownership of corporate stock and ownership of corporate assets are separate areas of inquiry.
>
> The master finds the valuation of this corporation extremely difficult. The re-created documents of stock indicate in May [of] 1993 (prior to the marriage) Husband created the corporation and issued all the stock to himself and also named himself to be all the officers. The stock was valued by himself at one cent per share. Husband testified to a business in Lewisburg known as Perk A Deli, which failed. He did not indicate when the business began precisely or ended; however, the corporation was actually in the red in March [of] 1998 to the tune of $18,602.87.
>
> Husband and Wife both signed a mortgage and paid off the entire debt for the Perk A Deli on March 20, 1998. The mortgage paid during the marriage was satisfied on April 15, 2009.

Wife was never made a corporate officer[, and she] did [not] ever receive any shares of stock at any time. Therefore, the master finds the [RAS BAR, Inc.] business is non-marital property that has increased in value and Wife's marital share is fifty percent of the increase in value. The starting value for determining the increased value is -$18,602.87.

The corporation did not have any debts at [the] date of separation, the stock was held entirely in Husband's name, and there were no other corporate officers other than Husband. Husband did not provide a value at all for the corporation, other than his pretrial statement where counsel claims RAS BAR, Inc. and all assets, including the liquor license, are worth a total of $5,000.00, and his post-trial brief seeking a finding that the liquor license...is worth $10,000.00.

Neither party provided a value for the stock. The master specifically rejects the price listed by Husband for the stock transfer to his son, which he later contradicted by stating that his son would eventually inherit the business, and counsel for Husband's own post-trial brief, which argues "Husband owns, in his name alone, a corporation named RAS BAR, Inc. (whose sole asset is a liquor license)." This statement alone is clearly not true, as the corporate tax returns list depreciation of property that was purchased during the marriage and includes rental income to real estate Husband inherited from his mother. In fact, the stock transfer certificates provided are not consistent with Husband's tax returns, which show Husband as owning .274% stock ownership and [his son] as owning 99.726% stock ownership. In addition, the real estate that the business operates on, which is marital property purchased during the marriage, is allegedly leased to [Husband's] son for a mere one dollar a year for the next ten years.

The master finds the value of the stock is directly tied to the corporation. As no value of the stock was alleged by either party, the master only proceeds to attempt to value the corporation. This non-marital asset should have been appraised with a business appraisal; however, neither party did so. Wife testified to her value of the asset based upon the gross sales approach and the tax returns and gross sales testified to by Husband. Wife used the gross sales, excluding 2009 because that was the year of the fire, and omitting 2011 because Husband never produced that year, and arrived at a value of $475,000.00. Wife testified the gross sales approach is a method of valuing a business using gross

sales per year and multiplying by three times and up to five times the sales.

The master finds the case of **Smith v. Smith** to be helpful in determining how to value the RAS BAR business. **Smith v. Smith**, 653 A.2d 1259 (Pa.Super. 1995).

In [**Smith**], [the] wife had the burden of producing evidence of the increased value of the gifts and inheritance she received during the parties' marriage since she had exclusive control over the relevant records. In the case [*sub judice*], Husband did not file an Inventory and Appraisal valuing any marital property or interest in marital property, including the business. His pretrial statement values RAS BAR and all assets, including the liquor license, at $5,000.00, but his testimony indicated the liquor license alone cost $25,000.00 over twenty years ago and the cost basis is $25,000.00. Husband's post-trial proposed schedule of distribution does not even list the corporation, but only lists the liquor license. Clearly, the corporation is more than just the liquor license as the business tax returns reveal gross sales during the years the license was in safe keeping, *i.e.*, not in use.

Husband claims Wife is not permitted to testify to the value of the business or the liquor license….

Concerning Wife's testimony on the value of RAS BAR, Inc., her opinion was based upon stipulated facts, financial tax returns of the business, and Husband's testimony that the Squeeze-In gross sales over the years is between $140,000 to $170,000 per year. Wife testified that she has a degree in business administration with a focus on accounting and worked as an auditor and then at a certified public accounting firm in Sunbury when the parties married, the same firm that the business used for its tax returns. The master notes that prior experts have testified concerning the gross sales approach to value a business and the restaurant business. Husband did not list any specific reasons why his opinion on value should be used. Moreover, using Husband's logic, he is also not competent to testify to the value of the corporation or the value of the liquor license [since] he transferred ownership to his son and is no longer an officer of any kind. Such a result is absurd.

\*\*\*

Wife testified to the gross sales approach and arrived at a value of $475,000.00. The…master will use [this testimony] in part, but not entirely. As stated earlier, RAS BAR, Inc. is a

premarital asset and shall be valued at the date of separation. The testimony of Wife included gross sales for post-separation years. The master finds a multiplier of four, higher than three, but not five, shall be used given the increase in sales over the years to assign a fair and equitable value but the average shall only include gross profits from 2010, 2012, 2013, and 2014. The master finds the value of RAS BAR, Inc. at date of separation to be $430,410.00. Using this value and the date of marriage value, negative $18,602.87, the master finds the increased value of the business equals $449,012.87.

Master's Report and Recommendation, filed 5/4/20, at 10, 24-28.

We find no abuse of discretion in this regard. ***Childress***, ***supra***. Specifically, the master did not err in permitting Wife to testify about the value of RAS BAR, Inc., and its assets, and the master was free to accept Wife's testimony as credible. ***See id.***

Moreover, we find no merit to Husband's contention the trial court was required to utilize the market-value approach, as opposed to Wife's gross-income based approach, in valuing the business. In determining the valuation of a business for purposes of equitable distribution, "[o]ur precedent requires that the trial court be given great discretion to evaluate the parties' valuation methods and determine which is most reliable." ***Carney v. Carney***, 167 A.3d 127, 132 (Pa.Super. 2017).

In criticizing Wife's testimony and valuation methods, Husband is asking this Court to substitute his viewpoint for the credibility findings of the master and the trial court. "We reiterate that we defer to the factfinder's discretion in weighing the evidence and assessing the credibility of the witness." ***Id.***

Simply put, the master concluded Wife's testimony was credible, and her valuation method accurately valued the business. "Consistent with our precedent…, the trial court was free to give weight to the master's report, particularly with respect to witness credibility, as the master had the opportunity to observe and assess the behavior and demeanor of the parties." *Carney*, 167 A.3d at 132 (citation omitted). As the findings are supported by the evidence, we cannot find the trial court abused its discretion in adopting Wife's valuation method for the RAS BAR business.[7] *See id.*

In his third issue, Husband contends the trial court erred by double counting certain business assets associated with RAS BAR. Specifically, he claims the trial court erred in double counting (1) the Swineford checking account, (2) the liquor license, (3) the property at 448½-450 Market Street in Sunbury (a/k/a Squeeze-In), and (4) the fair rental value of the RAS BAR apartment at 448½ Market Street. *See* Husband's Brief at 10. In this vein, he contends the trial court erroneously assigned these assets values under the gross income approach and the asset approach. We agree.

As indicated *supra*, the trial court was permitted to exercise its discretion in accepting Wife's gross-income based approach, and thus, the

---

[7] We note Husband challenges the master's valuation of particular RAS BAR assets, including the Swineford checking account, the liquor license, the property at 448½-450 Market Street (a/k/a Squeeze-In), and the fair rental value of the RAS BAR apartment at 448½ Market Street. However, given our discussion and resolution of Husband's third issue *infra*, we need not address his challenges to the valuation of these particular assets further.

- 18 -

court was permitted to find RAS BAR has a value of $449,012.87. ***See Carney***, ***supra***. However, after choosing this method of valuing the business and its assets, the trial court then separately valued and assigned to Husband as marital property the four assets set forth above. Since these four assets were already included in the value of RAS BAR under the gross-income based approach, the trial court erred in considering the four assets to be separate marital property. ***See Carney***, ***supra***. As Husband contends, the trial court was required to choose one method of valuing the business and its assets. ***See generally Gaydos***, ***supra***. Thus, while the trial court did not err in accepting Wife's valuation method of the business, the court erred in including the business assets as separate marital property when they were already evaluated as part of the business.

Because we agree with Husband's contention that the four assets listed *supra* were double counted by the trial court, we vacate and remand to the trial court to remove these four assets from the master's distribution plan and recalculate the amount due to Wife.

In his fourth issue, Husband contends the trial court erred in failing to include the American Express credit card debt as marital debt and in requiring him to pay any outstanding balances.

In determining Husband was responsible for any remaining balance on the American Express credit card, the master noted:

> Husband submitted credit card statements from American
> Express initially as Husband's Exhibit 16, Trial p. 264-277, and

supplemented as Husband's Exhibit 32, Snyder 252-552.[26] Exhibit 16 shows some purchases made in 2009 at Lowes, hotels, shopping for clothing and liquor. Exhibit 32 includes statements from closing date September 3, 2009, through January 7, 2015. The statement closing February 4, 2015, was not provided.

26 The master notes the exhibit shows clearly Wife's frustration with not receiving discovery. The Snyder pages were pages provided in discovery and the Trial pages were part of the pretrial exhibits. A review of Snyder 252-552 shows many pages of documents missing. The September 2009 statement shows pages 1, 3, and 4 of 5. Then pages 1 and 3 of 3 are provided for August 2009, following by June page 1 and 3. Very quickly it became easy to assume the statements were double-sided and only one side copied; however, if that were the case page 3/8, 4/8, and 5/8 would not all be copied as shown in Snyder 270-272.

There is a summary of new charges, Snyder 548, which shows four cards, Robert A. Snyder, Jr. x 1-02009, C A Snyder x 1-04013,[8] Kimberly Snyder x 1-01027, and Shelby Snyder x 1-01514.[9] There are pay in full amounts and pay over time amounts listed for each month and the pay over time charges have a diamond by each charge. There are 90,349 points available under account x 6096 as of November 30, 2014. These points have some value, although neither party testified to what value, although the points may be transferred into the SkyMiles Program and there is no longer a limit on the amount which may be transferred.

The master finds all debt associated with use of the America Express is not marital. The pay over time portion was almost entirely paid off when a payment of $17,903.36 was made on March 3, 2014, from Husband's Money Market Account, which was funded from a $20,000.00 check to Robert Snyder #3394 from the [home equity line of credit] on February 26, 2014. The new balance due as of April 1, 2014, was a mere $644.70.

Husband again paid almost the entire balance in September [of] 2014 with a $5,000.00 payment on a balance of $5,829.52. This payment was made from Husband's M&T Classic Checking x 1344 electronically on September 2, 2014. The funds for that payment were from a deposit on August 11, 2014, a check written

8 "C A Snyder" refers to Husband's son.

9 Shelby A. Snyder is the parties' daughter.

from the [home equity line of credit] in the amount of $15,000.00 to Bob Snyder.

In September [of] 2014, beginning with a balance of $829.52, there were new charges…totaling $6,637.58, of which, $6,118.72 was charged on the parties' daughter's card[,] which appears to have included flights and travel in Philadelphia, California, Florida, and State College. Husband paid $2,000.00 from his M&T power checking x 1344 toward that month's payment, which he had transferred $5,000.00 from the [home equity line of credit] into his M&T classic checking, check # 109.

In fact, since September [of] 2014, when the balance was just over $800.00, the only purchases made on Wife's card include $88.85 for fuel and parking fees in July [of] 2014; $0 in August and September; $0.99 in October; and $3.93 in November for i-tunes; and $102.00 at Susquehanna Ale House in December [of] 2014. Yet, the card issued to C A Snyder used $727.77 in December [of] 2014 alone. On December 2, 2014, RAS BAR, Inc. made an American Express Card payment in the amount of $1,200.00.

Bank statements of Husband's M&T checking account at the date of separation were not provided. The last monthly bill for the American Express card was also not provided. The most recent statement has a balance owed of $9,660.60. There is writing on the last statement; however, [there is] no testimony concerning what that means, therefore all handwriting on the exhibits not identified or testified to is omitted by the master as hearsay.

After reviewing the entire exhibit and the payments, as it seems the marital portion of any expenses, as well as many business purchases, were largely paid off by use of Husband's power/classic checking account x 1344, after drawing down on the [home equity line of credit] account, in his name alone, and considering these draw downs taken before date of separation are already considered, the master finds any amounts due and owing at date of separation on the American Express, if any, are Husband's sole responsibility. However, Husband shall also be awarded sole use of the points associated with the account.

Master's Report and Recommendation, filed 5/4/20, at 31-33 (footnote omitted) (footnotes added).

On appeal, in arguing the Master erred, Husband's entire argument is as follows:

> The Pennsylvania Supreme Court has held that "[b]etween divorcing parties, debts which accrue to them jointly prior to separation are marital debts." *Litmans v. Litmans*,…673 A.2d 382, 391 (Pa.Super. 1996) (citing *Duff v. Duff*, 510 Pa. 251, 507 A.2d 371 (1986)).
>
> The special master found the date of separation balance on the American Express card to be non-marital. It is not questioned that the debt was incurred prior to the separation of the parties. The debt is presumed to be marital. There is neither testimony nor evidence of record which overcomes this presumption. Accordingly, Husband should be credited with the debt in the amount of $9,660.69.

Husband's Brief at 28.

We find no abuse of discretion. *See Childress*, *supra*. Initially, we note the master indicated Husband failed to provide his last monthly M&T checking account statement. The evidence revealed that Husband often transferred money into his personal M&T checking account from the home equity line of credit, which was solely in his name, to pay the American Express credit card bill. Also, Husband failed to provide the last monthly American Express bill so that the master could determine what, if any, amount remained unpaid.

Moreover, the master noted the American Express credit card was used by the parties for personal expenses, as well as RAS BAR business expenses; however, since the final monthly bill had not been provided, the master was

unable to determine what portion of any outstanding balance was for personal, as opposed to business, expenses.

Given this lack of clarity, the master ordered that Husband was responsible for the remaining balance on the American Express credit card, if any. The master recognized that Husband should be responsible, rather than splitting the debt, after consideration of the parties' economic circumstances. The master also noted Wife's personal charges on the credit card were relatively minimal, and the master gave Husband sole use of the accrued points associated with the account.

The trial court has discretion to deal with each asset or debt discretely rather than applying a single percentage split to every part of the marital estate. *See Winters v. Winters*, 512 A.2d 1211, 1216 (Pa.Super. 1986) ("It is within the discretion of the court to credit an amount to one of the parties and take such credit into consideration when dividing the marital property."). Based upon the record, the trial court did not abuse its discretion. *See id.*

Husband next contends the master erred in its valuation of two automobiles, a boat, and the apartment furnishings in Husband's New York apartment. Specifically, Husband argues (1) the 2008 Lincoln Mark LT should have been valued at $10,000.00 instead of $20,050.00; (2) the 1995 Mercedes Benz SL 500 should have been valued at $0.00 instead of $7,975.00; (3) the 1989 28-Foot Rinker Festavee 250 boat should have been valued at $0.00 instead of $9,250.00; and (4) the apartment furnishings

should have been valued at $500.00 instead of $3,257.84. ***See*** Husband's Brief at 28-31. For each of these items, Husband suggests the trial court erred in finding Wife's testimony credible as to the value of the items. He specifically suggests that he "has offered more reliable testimony" as to the value of the items. ***Id.*** at 30.

Here, in valuing the items, the master indicated the following:

> Husband testified that [the 2008 Lincoln Mark LT], although titled in his Mother, Anna Snyder's name, belonged to him and was only purchased in her name due to better credit. The title to the vehicle issued on August 22, 2018[,] remains in his Mother's name. The truck is listed on Schedule E of Anna Snyder's decedent tax return with a value of $23,950.00 at date of death, March 10, 2010. The NADA[10] value of the truck as of December 21, 2017[,] is between $16,550.00 for a rough trade-in up to $23,450.00 for clean retail. Husband testified that he paid for the truck and admits it is marital property. While he testified it needs transmission work, he also stated it looks brand new and is beautiful. In addition, he stated he doesn't put more than 2,000 to 5,000 miles per year on it, using it in parades. It is noted Husband has not filed an Inventory and Appraisal indicating the value or condition of this vehicle[,] and while he testified it needs transmission work, he did not provide any testimony or exhibits to a different value. As such, the master finds this vehicle was purchased during the marriage[,]…is marital property[,] and [is] assign[ed] the NADA clean trade-in value of $20,050.00.
>
> ***
>
> Husband testified that [the 1995 Mercedes SL 500] was purchased for seven or eight thousand dollars, but [it] could have been ten or twelve thousand. The NADA value average retail price is $7,975.00, and he hopes to sell it and get that price. He claims that [the] vehicle needs a new transmission, but [it] starts. He

---

[10] National Automobile Dealers Association. An entity called National Appraisal Guides, Inc., licensing the name "NADA," publishes vehicle pricing information and tools for new, used, and classic cars, for use by consumers, dealers, and other entities.

said there is no dipstick on the transmission[,] so he has to take it to a dealer. As such, based upon the undisputed value, the master finds this vehicle [is] a marital asset worth $7,795.00.[11]

***

Wife's Inventory and Appraisal filed [on] January 5, 2018[,] clearly lists the [1989 28-Foot Rinker Festavee 250 boat] as a marital asset with an approximate value of $13,250.00. Husband never filed an Inventory and Appraisal, but [he] [summarily] lists the boat as non-marital property on his pretrial statement filed [on] June 25, 2018, with an estimated value…of $8,400.00.

Husband testified he purchased this boat in early 1993 by obtaining a bank loan in the amount of $16,000.00 from Ben Cerven after he wanted $25,000.00 and Husband wrote out a check for four thousand dollars. The boat was paid off during the marriage.

After the separation[,] Husband claims he owes about six to eight thousand dollars because of the engine transmission and three years of storage; however, no evidence of any debt was provided to substantiate this alleged debt incurred post separation. The NADA value produced by Wife as of December [of] 2017 indicates [an] average retail value of $13,250.00.

The increase in value of any non-marital asset shall be deemed marital. The court shall use whichever value, date of separation or date of distribution, results in a lesser increase. In this case[,] there is no value to compare because the master finds Husband failed to meet his burden of proof that there is any debt or lesser value than that of the NADA value. His testimony throughout the hearing was self-serving and without any documentation to support his statements, such that both his vehicles and boat all allegedly have transmission problems without ever producing a mechanic statement or testimony.

As such, the master finds the equity in the boat at date of marriage is approximately $4,000.00 and the value produced by Wife (which is between date of separation and date of distribution)

---

[11] It appears the master made a typographical error in the report and recommendation, thus inverting the numbers in the valuation of the 1995 Mercedes Benz. However, there is no dispute the master utilized the value of "$7,975.00" in the proposed distribution of assets.

is $13,250.00, the marital increase in value is the difference, or $9,250.00

\*\*\*

Husband's receipts for items purchased to furnish the New York apartment less than a year before date of separation is $3,254.84. The master finds the amount[] used to be fair and reasonable.

Master's Report and Recommendation, filed 5/4/20, at 17-19, 23 (footnote omitted) (footnotes added).

Initially, we note that, as it pertains to the Lincoln Mark LT, our review of the record indicates that Husband described the condition of the vehicle as "beautiful" and that he drives the vehicle "every day[.]" N.T., 10/24/19, at 132. As to the value, he testified "I would think I would get what any 2008 is worth, I don't think it's any different than that, and I have no idea what the NADA value is." *Id.* at 133. However, when shown the NADA exhibits, he agreed the clean trade-in value for such a vehicle in 2017 was $20,050.00, which is the value the master assigned to the vehicle. *Id.* at 133-34.

As to the 1995 Mercedes Benz 500 SL, Husband testified the value of the vehicle was "$8,000, 79, 75, I'm not arguing with that." *Id.* at 136. The master assigned a value of $7,975.00.

Regarding the boat, Husband testified he purchased the boat in 1993 for $16,000.00. *Id.* at 138. He agreed that he paid off the loan on the boat, but he owes $6,000.00 or $8,000.00 to a mechanic, who repaired the transmission the year prior to the master's hearing. *Id.* at 139. However, Husband did not provide documentation in support of his claim.

Regarding the apartment furnishings, Husband agreed the receipts from the purchase of furnishings totaled "[g]ive or take 3200 bucks[.]" *Id.* at 159. The master valued the furnishings at $3,254.84.

In any event, to the extent the master found Wife's testimony to be more credible than Husband's testimony as to the value of these items, we will not disturb the credibility determinations or reweigh the evidence. *See Childress*, *supra*. Further, we note that, to the extent the master used the NADA in establishing the value for the vehicles, this Court has concluded such a valuation method is acceptable in equitable distribution cases. *See Carney*, *supra*. Thus, we find no abuse of discretion or error of law.

In his final issue, Husband contends the trial court erred in ordering Husband to pay Wife a lump sum of $420,731.23 instead of ordering a distribution of assets in kind.

We emphasize the flexible approach provided under the Divorce Code for the equitable distribution of property. Specifically, the relevant statutory language provides "[u]pon the request of either party in an action for divorce…, the court shall equitably divide, distribute or assign, in kind or otherwise, the marital property between the parties…in such manner as the court deems just after considering all relevant factors." 23 Pa.C.S.A. § 3502(a).

According to the Divorce Code, the legislative intent and policy of this Commonwealth is to: "Effectuate economic justice between parties who are

divorced or separated." 23 Pa.C.S.A. § 3102(a)(6). The specific language of this policy under the statute is to "insure a fair and just determination and settlement of their property rights." *Id.*

In the case *sub judice*, Husband has cited no authority in support of his argument that the trial court erred in ordering him to pay Wife her share of the marital assets in a lump sum of cash as opposed to assets in kind.[12] "The trial court had the discretion to decide that [Husband] pay [Wife] via any method it saw fit, so long as the result was a 'fair and just' determination of the parties' rights." *Wayda v. Wayda*, 576 A.2d 1060, 1064 (Pa.Super. 1990).

We have reviewed the record, and we find no evidence that the trial court misapplied the law or failed to follow proper procedure in deciding that Husband should make a lump sum cash payment to Wife. Therefore, we cannot conclude that the trial court's decision in this regard constituted an abuse of discretion. *See id.*

For all of the foregoing reasons, we affirm the trial court's decree in all respects, except to the extent it double counted four of RAS BAR's assets: (1) the Swineford checking account, (2) the liquor license, (3) the property at 448½-450 Market Street in Sunbury (a/k/a Squeeze-In), and (4) the fair

---

[12] We note Husband's sole cited authority, *Gaydos*, *supra*, stands for the general principle that the trial court has broad equitable power to effectuate economic justice in determining a distribution scheme. *See* Husband's Brief at 31.

rental value of the RAS BAR apartment at 448½ Market Street.  Upon remand, we direct the trial court to remove these four assets from the master's distribution plan and recalculate the amount due to Wife.

Decree affirmed, in part, and vacated, in part.  Case remanded for proceedings consistent with this decision.  Jurisdiction relinquished.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/20/2022