J-A08035-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| AMY M. REVAK | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| FRANK T. REVAK, JR. | : | |
| | : | |
| Appellant | : | No. 1015 WDA 2022 |

Appeal from the Order Entered August 5, 2022
In the Court of Common Pleas of Fayette County Civil Division at No(s):
234 of 2019 GD

BEFORE:  STABILE, J., SULLIVAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:                    **FILED: MAY 11, 2023**

Frank T. Revak, Jr. (Husband) appeals from the August 5, 2022 equitable distribution order entered by the Court of Common Pleas of Fayette County (trial court) awarding 65% of the marital value of four certificates of deposit (CDs) to Amy M. Revak (Wife).  We affirm.

**I.**

We glean the following facts from the certified record.  Wife initiated this divorce action in 2019 following over ten years of marriage to Husband.  At the time of the divorce proceedings, Wife was 52 years old, in good health and had been employed as Chief Clerk in Fayette County for approximately nine years.  She earned $50,000 per year with a net monthly income of $3,851

_____

[*] Retired Senior Judge assigned to the Superior Court.

and received $400 in child support per month from Husband. Husband was unemployed and had been receiving a disability pension from his work as a tax technician for the Internal Review Service since approximately 2003. In addition, Husband received income from a rental unit on his property and monthly interest from four CDs, totaling a monthly income of approximately $4,800. Husband had purchased his property, which included the rental unit, in 1991, prior to his marriage to Wife.

The parties proceeded to a hearing in front of a Special Master to resolve the equitable distribution of the marital estate. A primary point of contention in the equitable distribution was the marital value of the CDs, valued at a total of $860,000 at the time of separation, as the parties disagreed about the extent to which Husband had funded the CDs with marital or premarital funds. After receiving evidence regarding Husband's assets at the time of the marriage, the Special Master found that Husband had purchased the CDs with $573,902 in premarital funds. Accordingly, the Special Master's report and recommendation valued the marital portion of the CDs at $286,098.

The Special Master awarded the marital components of various bank accounts and retirement accounts to the named owner of the accounts, awarded the marital component of the CDs and the marital residence to Husband, and divided other smaller assets such as vehicles and other personal property between the parties. He added the total value of all assets to reach an award of $241,880 to Wife and $395,740.85 to Husband. Finding that an

equal distribution of the marital assets was appropriate under the circumstances, the Special Master required Husband to make a one-time payment of $76,930.42 to Wife, such that each party would receive $318,810.42 in marital assets.[1]

Wife filed exceptions to the Special Master's report challenging the Special Master's determination of the premarital value of the funds used to purchase the CDs. She argued that Husband had not produced sufficient evidence to establish the value of premarital assets used to purchase the CDs and that he had failed to establish valuation dates for certain accounts. She contended that the Special Master excluded too much of the value of the CDs as premarital without sufficient evidence.

Following oral argument, the trial court accepted the Special Master's determination of the premarital and marital values of the CDs. However, it modified the Special Master's recommendation to distribute 65% of the marital value of the CDs to Wife and 35% to Husband. It did so because "[i]n consideration of the estate of each of the parties, with Husband in possession of the premarital value of the certificates of deposit, in excess of $570,000.00, . . . it is equitable for Wife to receive a larger portion of the marital component of the certificates of deposit." Final Decree, 8/5/22, at 3 (pagination

---

[1] The parties discovered a mathematical error in the report, which the trial court corrected in its final order.

supplied). In all other respects, the trial court accepted the Special Master's recommendation and incorporated his findings as set forth in his report. ***Id.*** at 2. The marital assets were distributed as follows:

**A. TO WIFE:**

1. Marital component of Community Bank checking account - $51,552.00
2. Marital component of [W]ife's fidelity IRA - $53,814.00
3. Wife's Pension through Fayette County - $131,339.00
4. Wife's 2011 Honda Pilot - $5,000.00
5. Ruger pistol - $175.00
6. 65% of the marital component of 4 certificates of deposit - $185,963.70. (In order to effectuate this provision, Husband shall make a payment to Wife in the amount of $185,963.70)

**B. TO HUSBAND:**

1. 2254 and 2256 Masontown Road, Masontown - $95,000.00
2. 35% of the marital component of 4 certificates of deposit - $100,134.30
3. First National Bank checking account - $14,245.00
4. First National Bank checking account - $18,027.85
5. Guns - $370.00

***Id.*** at 1-2. Husband timely appealed and he and the trial court have complied with Pa. R.A.P. 1925.[2]

_____

[2]

> Our standard of review when assessing the propriety of an order effectuating the equitable distribution of marital property is whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure. We do not lightly find an abuse of discretion, which requires a showing of clear and convincing evidence. This court will not find an abuse of discretion unless the law has been overridden or misapplied or the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the

*(Footnote Continued Next Page)*

**II.**

**A.**

Husband's first three issues on appeal are related and we address them together. He argues that the trial court abused its discretion by altering the Special Master's division of the marital value of the CDs to award 65% of the value to Wife when she requested a 50% split of the marital assets in her exceptions. He contends that by awarding relief that Wife did not request, the trial court acted as her advocate. He further argues that the trial court abused its discretion by fashioning an equitable distribution award that resulted in 65.25% of the marital estate being awarded to Wife in contravention of the Special Master's recommended of a 50% split. Husband's Brief at 30-42.

---

evidence in the certified record. In determining the propriety of an equitable distribution award, courts must consider the distribution scheme as a whole. We measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights.

Moreover, it is within the province of the trial court to weigh the evidence and decide credibility and this court will not reverse those determinations so long as they are supported by the evidence. We are also aware that a master's report and recommendation, although only advisory, is to be given the fullest consideration, particularly on the question of credibility of witnesses, because the master has the opportunity to observe and assess the behavior and demeanor of the parties.

***Goodwin v. Goodwin***, 244 A.3d 453, 458 (Pa. Super. 2020), *aff'd*, 280 A.3d 937 (Pa. 2022) (cleaned up; citations omitted).

As to Husband's contention that the trial court's award of 65% of the marital value of the CDs was an abuse of discretion because Wife only requested a 50/50 split, this argument takes Wife's request out of context. In her exceptions, Wife argued for an equal split of the marital component of the CDs, but contended that the marital value was approximately $734,905, not $286,098. *See* Exceptions to Special Master's Report Filed March 9, 2022, 3/31/22, at 1-2 (pagination supplied); Suggested Findings of Fact, 11/12/21, Summary. By ordering a 65/35 split of $286,098, the trial court awarded Wife less than she had requested in her exceptions, not more. As discussed *infra*, the trial court was entitled to alter the Special Master's recommendation in this way, **Morschhauser v. Morschhauser**, 516 A.2d 10, 15 (Pa. Super. 1986), and Husband's claims to the contrary have no merit.

Husband also complains that the trial court's award abused its discretion by fashioning a different remedy than the Special Master. When an equitable distribution action is referred to a hearing officer, after receiving evidence, the hearing officer must author and report a recommendation for the trial court that includes findings of fact, conclusions of law and a recommended disposition. Pa. R. Civ. P. 1920.53. Upon receipt of the report, the parties may file exceptions to the trial court, and any matters not covered therein are waived. Pa. R. Civ. P. 1920.55-2(b). After reviewing the report and recommendation and following argument on exceptions, the trial court enters a final decree resolving the economic claims between the parties. Pa. R. Civ.

P. 1920.55-2(c). However, "the trial court is afforded great discretion in fashioning an equitable distribution order which achieves economic justice." *Carney v. Carney*, 167 A.3d 127, 131 (Pa. Super. 2017) (citation omitted).

This Court has previously rejected Husband's argument that a trial court's authority to enter an equitable distribution order is cabined by the exceptions the parties raise to the hearing officer's report and recommendation:

> Although the rules of procedure provide for the appointment of a master to conduct a hearing, prepare a report and make recommendations (Pa.R.C.P. 1920.51) this does not transfer the final responsibility of making the distribution to the master.
>
> A master's report is entitled to great consideration, but the court is not bound by it. . . . The court is required to structure an equitable distribution of property in light of the factors set forth in [the Divorce Code]. **If in its discretion the court determines it must deviate from the recommendation of the master it may do so regardless of whether either party has raised the issue in an exception**. Our function then becomes one of determining if the court's action constituted an abuse of discretion under the statutory guidelines.

*Morschhauser*, *supra*, at 15 (Pa. Super. 1986) (citations omitted; emphasis added); *see also Balicki v. Balicki*, 4 A.3d 654, 661 (Pa. Super. 2010) (finding no abuse of discretion when trial court *sua sponte* considered tax ramifications of alimony award when it was not raised in either parties' exceptions). Accordingly, the trial court was well within its authority to alter the recommendation of the Special Master even when the specific award it fashioned was not requested by either party.

Further, we discern no abuse of discretion in the trial court's reasoning

for deviating from the Special Master's recommendation:

> [I]n considering the types and values of the assets overall, this Court saw that almost all of the monetary assets awarded to [] Wife were not immediately accessible nor readily convertible to liquid assets (e.g., IRA, pension). In order to remedy this, this Court granted a larger portion of the marital component of the CD assets to [] Wife, and it did so in alignment with the distribution already recommended by the hearing officer for the other marital assets. Although [] Wife would have accepted a fifty-fifty division (an equal result), the type of assets distributed to each party merited some deviation in order achieve an equitable result.

Trial Court Opinion 10/28/22, at 6. The trial court further noted that the

Special Master's recommendation "would have resulted in [] Wife receiving

only about twenty-seven (27) percent of the marital component of the CDs

whereas [] Husband would have received over seventy-three (73) percent of

the marital component and ninety-one (91) percent of the total CD assets."

*Id.* at 6 n.4. As trial courts are granted broad discretion to fashion equitable

distribution awards that achieve fairness and justice between the parties

under the unique circumstances of each case, we cannot conclude that this

explanation was the result of a misapplication of the law or partiality,

prejudice, bias or ill will. ***Goodwin***, ***supra***.

**B.**

In his final issue, Husband contends that the trial court failed to consider

all the required statutory factors when it entered the equitable distribution

order. Specifically, he argues that the trial court did not consider: (1) the

"short duration" of the parties' ten-year marriage; (2) the relative ages of the

- 8 -

parties, with Husband being 11 years older; (3) the health of the parties, with Wife being "fairly" healthy and Husband having a disability that prevented him from working; (4) the parties' relative earning capacities; (5) the sources of the parties' income, as Husband relies in part on interest earned on the CDs; and (6) that Husband was the sole contributor to the CDs.

The Divorce Code sets forth factors that a trial court should consider in crafting an equitable distribution order:

> **(a) General rule.--**Upon the request of either party in an action for divorce or annulment, the court shall equitably divide, distribute or assign, in kind or otherwise, the marital property between the parties without regard to marital misconduct in such percentages and in such manner as the court deems just after considering all relevant factors. The court may consider each marital asset or group of assets independently and apply a different percentage to each marital asset or group of assets. Factors which are relevant to the equitable division of marital property include the following:
>
> > (1) The length of the marriage.
> >
> > (2) Any prior marriage of either party.
> >
> > (3) The age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties.
> >
> > (4) The contribution by one party to the education, training or increased earning power of the other party.
> >
> > (5) The opportunity of each party for future acquisitions of capital assets and income.
> >
> > (6) The sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits.
> >
> > (7) The contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the

marital property, including the contribution of a party as homemaker.

(8) The value of the property set apart to each party.

(9) The standard of living of the parties established during the marriage.

(10) The economic circumstances of each party at the time the division of property is to become effective.

(10.1) The Federal, State and local tax ramifications associated with each asset to be divided, distributed or assigned, which ramifications need not be immediate and certain.

(10.2) The expense of sale, transfer or liquidation associated with a particular asset, which expense need not be immediate and certain.

(11) Whether the party will be serving as the custodian of any dependent minor children.

23 Pa. C.S. § 3502(a). The weight assigned to each factor is within the trial court's discretion and we will not reweigh the factors on appeal. **Busse v. Busse**, 921 A.2d 1248, 1260 (Pa. Super. 2007).

As the trial court explained in its opinion, it considered each of these factors and simply reached different factual findings and conclusions regarding their respective weight than Husband:

First, this Court did not deem ten years to be a short amount of time.[5]

> [5] Interestingly, [] Husband's Concise Statement characterizes ten (10) years of marriage as a "short duration," but eleven (11) years between birth dates as a significant span of time.

Second, as to the difference in ages, health, potential for future earnings, and [] Husband's partial dependence on interest from

- 10 -

the CDs, as discussed, this Court considered the type of assets distributed as well as their monetary value.  In addition, according to the divorce complaint, the parties were married on August 1, 2008, at which time [] Husband already had been receiving a disability pension for five (5) years.  [] Husband therefore is limited in his earning potential due to disability that existed prior to the marriage, not because of his more advanced age compared to [] Wife.  Furthermore, this Court notes that [] Husband still retains a majority of the total CD assets (78%) and still has more than one current source of income, including rental income from the residence awarded to him as part of the equitable distribution.

Finally, as to [] Husband's contention that [] Wife did not make any contributions to the CDs and that this should have weighed more heavily in [] Husband's favor, mutual contribution is not required for an increase in value of an asset to be considered marital property and again, [] Husband still retains the majority of the total CD funds.

Trial Court Opinion 10/28/22, at 7-8 (citation omitted).

Moreover, in the Final Decree, the trial court explicitly adopted and incorporated the factual findings of the Special Master.  Final Decree, 8/5/22, at 2.  ("In all respects not altered herein, the Court accepts the Recommendation of Special Master . . . and incorporates herein the Findings and Recommendations set forth in the Report.")  In his report and recommendation, the Special Master set forth specific factual findings as to each of the required factors with citations to the evidentiary hearing record. *See* Special Master's Report, 3/9/22, at 2-6, 12-15 (pagination supplied).  The Special Master's findings thoroughly addressed the parties' respective incomes and earning capacities, their standard of living, the value of various marital and pre-marital assets and their contributions to the marital estate.  The Master found credible Husband's testimony about the pre-marital value of the

CDs and the trial court accepted that finding despite Wife's exceptions. We have previously held that a trial court does not abuse its discretion in adopting a Master's findings as to the Section 3502(a) factors when those findings are supported by the evidentiary record. **Childress v. Bogosian**, 12 A.3d 448, 462 (Pa. Super. 2011); **see also Snyder v. Snyder**, 275 A.3d 968, 980 (Pa. Super. 2022). Our review of the record of the equitable distribution hearing reveals that it supports the conclusions set forth in the Special Master's report and the trial court did not abuse its discretion in adopting those findings.

Husband's argument amounts to a disagreement with the weight the trial court assigned to certain statutory factors and the conclusions it drew from those factors. However, he does not point to anything in the record to suggest that its factual findings are not supported by the record or that they were motivated by partiality, prejudice, bias or ill will in contravention of our standard of review. **Goodwin**, **supra**. While Husband would have weighted certain factors differently, such as Wife's premarital assets and her continued earning capacity, the mere fact that the trial court reached the opposite conclusion does not establish an abuse of discretion. Because the trial court considered all required factors in fashioning its equitable distribution order and its factual findings are supported by the record, Husband's final issue merits no relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/11/2023