2024 PA Super 150

| | | |
|---|---|---|
| ROBERT V. MARTIN, JR. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHERRI A. MARTIN | : | |
| | : | |
| Appellant | : | No. 1495 WDA 2022 |

Appeal from the Decree Entered November 23, 2022
In the Court of Common Pleas of Westmoreland County Civil Division at
No(s): 2153 of 2016-D

BEFORE: BOWES, J., KUNSELMAN, J., and COLINS, J.*

OPINION BY BOWES, J.: **FILED: JULY 22, 2024**

Cherri A. Martin ("Wife") appeals from the economic component of the divorce decree entered on November 23, 2022.[1] We affirm in part, vacate in part, and remand for further proceedings.

Wife and Robert V. Martin, Jr. ("Husband") married in 1998, and on December 6, 2016 Husband filed a complaint in divorce seeking, *inter alia*, equitable distribution and exclusive possession of the marital residence. Wife responded by raising counts of equitable distribution, alimony *pendente lite*

---

* Retired Senior Judge assigned to the Superior Court.

[1] Wife does not challenge the dissolution of the marriage. Instead, she challenges the trial court's May 24, 2022 order addressing the parties' respective exceptions to recommendations issued by the divorce master. As this Court quashed Wife's prior appeal from the May 24, 2022 order as interlocutory pending the entry of the divorce decree, we review the merits of her economic challenges at this juncture.

("APL"), and alimony. Pending the resolution of the competing economic claims, the parties entered into a consent decree that granted Husband exclusive possession of the marital residence as of February 1, 2017 and awarded Wife $2,400.00 monthly APL as of the same date. *See* Order 1/5/17, at 1. While Husband did not reside at the property, he had exclusive possession, maintained it, and paid the mortgage until the couple ultimately sold the residence, receiving net proceeds of $203,329.25. During the separation, the court divided the couple's savings account and advanced Wife $17,500.00. Husband retained $9,000.00 in the account, which he continued to use post-separation.

Following evidentiary hearings before the divorce master on October 25, and November 2, 2021, and the parties' briefing of their respective positions, the master issued a January 20, 2022 report and recommendation, which the trial court adopted as an order entered on January 24, 2022. Consistent with the master's recommendation, the trial court divided the marital estate sixty percent/forty percent in favor of Wife. Specifically, the trial court awarded Wife, among other things, a sixty-percent share of each of the marital portions of Husband's military pension that was in pay status and administered by the Defense Finance and Accounting Service ("DFAS"), two private-sector retirement savings plans that accrued during Husband's post-military service employment as an engineer with Bechtel Marine Propulsion ("Bechtel") and its successor Fluor Marine Propulsion ("Fluor"), and the proceeds from the sale of

- 2 -

the marital home, minus a $43,773.12 credit for Husband's post-separation mortgage payments. In sum, the court awarded Wife $95,733.62 for her portion of the marital home, $47,157.77, representing her sixty-percent share of the balance in the couple's Navy Federal Credit Union savings and checking account at date of separation, $88,738.82 from the Fluor/Bechtel retirement savings plans, and $1,156.20 per month, which is sixty percent of the military pension's monthly marital component. However, it denied Wife's claim for alimony, in part, "due to the length of time in which [Husband paid APL,]" approximately five years, and permitted Husband to remove Wife from the survivor benefit plan ("SBP"). Trial Court Opinion, 8/19/22, at unnumbered 3.

Husband and Wife both filed timely exceptions to the master's recommendation. Husband challenged the 60%-40% equitable distribution scheme, generally, and specifically assailed the court's: (1) calculation of the marital component of Husband's Bechtel retirement plan; (2) failure to award a credit for the purported overpayment of APL; and (3) division of the military pension in contravention of the Uniformed Services Former Spouses' Protection Act concerning the "[p]ayment of retired [military] pay in compliance with court orders." 10 U.S.C. § 1408. As to the military pension, Husband argued that § 1408 prohibited the distribution of more than one-half of the retirement benefit to a former spouse.

Wife, meanwhile, contested the termination of the SBP component of the military pension, the $43,773.12 credit awarded to Husband for the post-separation mortgage payments, and the denial of alimony. On May 24, 2022, the trial court entered the above-captioned order that denied all of Wife's exceptions and granted Husband's exceptions relating to the calculation of the Bechtel retirement plan and § 1408's restrictions on the distribution of military pensions.

This timely appeal followed. Wife complied with the trial court order to file a Pa.R.A.P. 1925(b) statement, and the court issued a responsive Rule 1925(a) opinion.

Wife presents five issues for our review, which we re-order for ease of disposition:

I.      Whether the trial court erred by not granting [Wife] alimony.

II.     Whether the trial court erred in its calculation of [Wife's] share of [Husband's] retirement plan.

III.    Whether the trial court erred [in] granting [Husband] credit for payments made towards the principal amount of the mortgage on the marital residence.

IV.     Whether the trial court erred by granting [Husband's] exception to reduce the amount the Appellant is eligible to receive under 10 U.S.C. [§] 1408.

V.      Whether the trial court erred by permitting [Husband] to eliminate or remove the [SBP] from his military retirement, including the elimination or removal of [Wife] as the beneficiary of such a designation.

Wife's brief at 8 (unnecessary capitalization omitted).

Wife's first issue concerns the trial court's denial of her alimony claim, which we review for an abuse of discretion. ***See Conner v. Conner***, 217 A.3d 301, 315 (Pa.Super. 2019). As we have explained:

> [T]he purpose of alimony is not to reward one party and to punish the other, but rather to ensure that the reasonable needs of the person who is unable to support himself or herself through appropriate employment, are met. Alimony is based upon reasonable needs in accordance with the lifestyle and standard of living established by the parties during the marriage, as well as the payor's ability to pay. Moreover, alimony following a divorce is a secondary remedy and is available only where economic justice and the reasonable needs of the parties cannot be achieved by way of an equitable distribution award and development of an appropriate employable skill.

***Id***. at 315-16 (cleaned up). The Divorce Code provides that, "[i]n determining whether alimony is necessary and in determining the nature, amount, duration and manner of payment of alimony," the trial court must consider the following seventeen non-exclusive factors:

> (1) The relative earnings and earning capacities of the parties.
>
> (2) The ages and the physical, mental and emotional conditions of the parties.
>
> (3) The sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits.
>
> (4) The expectancies and inheritances of the parties.
>
> (5) The duration of the marriage.
>
> (6) The contribution by one party to the education, training or increased earning power of the other party.
>
> (7) The extent to which the earning power, expenses or financial obligations of a party will be affected by reason of serving as the custodian of a minor child.

(8) The standard of living of the parties established during the marriage.

(9) The relative education of the parties and the time necessary to acquire sufficient education or training to enable the party seeking alimony to find appropriate employment.

(10) The relative assets and liabilities of the parties.

(11) The property brought to the marriage by either party.

(12) The contribution of a spouse as homemaker.

(13) The relative needs of the parties.

(14) The marital misconduct of either of the parties during the marriage. The marital misconduct of either of the parties from the date of final separation shall not be considered by the court in its determinations relative to alimony, except that the court shall consider the abuse of one party by the other party. As used in this paragraph, "abuse" shall have the meaning given to it under [§] 6102 (relating to definitions).

(15) The Federal, State and local tax ramifications of the alimony award.

(16) Whether the party seeking alimony lacks sufficient property, including, but not limited to, property distributed under Chapter 35 (relating to property rights), to provide for the party's reasonable needs.

(17) Whether the party seeking alimony is incapable of self-support through appropriate employment.

23 Pa.C.S. § 3701(b).

Wife asserts that the trial court erred in adopting the master's recommendation because it disregarded the enumerated factors and simply rejected alimony based upon the length of time in which APL has been paid. *See* Wife's brief at 21-22. She contends that the focus on the prior APL award

was misplaced because that temporary, need-based remedy served a different purpose than alimony, *i.e.*, economic justice. *Id*. at 22-23. Wife also maintains that her earning capacity continues to be limited by the fact that the parties agreed that she would not work during the marriage, and highlights that, while she earns approximately $12.00 per hour, Husband earns more than $110,000 annually. *Id*. at 23. She also contests the trial court's finding that she did not adduce evidence of her bills or expense, reasoning her "financial status and need was present throughout the entire hearing" and "[b]oth parties acknowledge Wife's far inferior living situation[.]" *Id*. at 24. In this vein, she opines that "nearly all of the evidence and testimony presented during the two days of testimony demonstrates a need." *Id.*

Ultimately, Wife posits that focusing on the duration of APL was error considering the disparity in the parties' respective earning capacity and her demonstrable need for alimony pursuant to the relevant factors outlined in § 3701(b). *Id*. at 25. As explained *infra*, we reject both aspects of Wife's assertion.

While the master mentioned the duration of APL in rejecting alimony, he also discussed several of the relevant statutory alimony factors outlined in § 3701(b) when he addressed the ultimate issue of equitable distribution. *See* Trial Court Opinion, 8/19/22, at unnumbered 9; Master's Report, 1/20/22, at 19. Specifically, the master's recommendation included discussions concerning the age, conditions, and relative earnings and earning capacities

of the parties, their respective sources of income, the duration of the marriage and the "upper-middle class" standard of living that the couple enjoyed while the marriage was intact, Wife's contribution as a homemaker, and her relative needs and the probability that she will never realize a significant increase in earnings. *Id*.

Thus, while not expressly enumerated in the report and recommendation, the master considered alimony factors one through five, eight, twelve, thirteen, sixteen, and seventeen. As it relates specifically to whether Wife had sufficient property to maintain her reasonable needs, the report also notes that Wife received $95,733.62 in proceeds from the sale of the marital home, $47,157.77 from the checking and savings account, and sixty percent of the marital portion of Husband's retirement accounts. *Id*. at 20, 22, 23. Thus, notwithstanding the roughly $144,000 that Wife received in APL over a five-year period, her portion of the equitable distribution scheme was approximately $400,000. As this Court has observed, "the factors in Section 3701(b) do not create an exhaustive list. In fact, the trial court should also consider the assets the petitioning spouse received in equitable distribution." *Schultz v. Schultz*, 184 A.3d 168, 180 (Pa.Super. 2018) (citation omitted). Here, the certified record supports both the trial court's finding that the master considered the relevant alimony factors, and its concomitant determination that alimony was not warranted where, as here,

Wife's reasonable needs could be achieved through equitable distribution. No relief is due.

Wife's remaining issues relate to the equitable distribution of the marital estate. We review these claims in light of the following principles:

> Our standard of review in assessing the propriety of a marital property distribution is whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure. An abuse of discretion is not found lightly, but only upon a showing of clear and convincing evidence.

*Busse v. Busse*, 921 A.2d 1248, 1257 (Pa.Super. 2007) (citation omitted).

Additionally:

> In determining the propriety of an equitable distribution award, courts must consider the distribution scheme as a whole. We measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights.

> Moreover, it is within the province of the trial court to weigh the evidence and decide credibility and this Court will not reverse those determinations so long as they are supported by the evidence. We are also aware that a master's report and recommendation, although only advisory, is to be given the fullest consideration, particularly on the question of credibility of witnesses, because the master has the opportunity to observe and assess the behavior and demeanor of the parties.

*Carney v. Carney*, 167 A.3d 127, 131 (Pa.Super. 2017) (cleaned up).

In fashioning an equitable distribution award, "the trial court must consider, at a minimum, the eleven factors set forth in 23 Pa.C.S. § 3502[.]" *Gates v. Gates*, 933 A.2d 102, 105 (Pa.Super. 2007) (cleaned up). These are as follows:

(1) The length of the marriage.

- 9 -

(2) Any prior marriage of either party.

(3) The age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties.

(4) The contribution by one party to the education, training or increased earning power of the other party.

(5) The opportunity of each party for future acquisitions of capital assets and income.

(6) The sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits.

(7) The contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as homemaker.

(8) The value of the property set apart to each party.

(9) The standard of living of the parties established during the marriage.

(10) The economic circumstances of each party at the time the division of property is to become effective.

(10.1) The Federal, State and local tax ramifications associated with each asset to be divided, distributed or assigned, which ramifications need not be immediate and certain.

(10.2) The expense of sale, transfer or liquidation associated with a particular asset, which expense need not be immediate and certain.

(11) Whether the party will be serving as the custodian of any dependent minor children.

23 Pa.C.S. § 3502(a).

In reviewing a trial court's distribution order, this Court will not engage in a factor-by-factor review of the trial court's rulings. Rather, "we look at the

- 10 -

distribution as a whole, in light of the court's overall application of the . . . § 3502(a) factors for consideration in awarding equitable distribution.  If we fail to find an abuse of discretion, the order must stand." ***Lee v. Lee***, 978 A.2d 380, 383 (Pa.Super. 2009) (cleaned up).

Wife's first challenge to the court's equitable distribution order concerns her share of Husband's Bechtel retirement plan.  Despite how this issue is phrased in her statement of questions presented, Wife does not assert that the trial court made a miscalculation.  Rather, this issue relates to the master holding the record open so that Husband could introduce evidence to establish his non-marital contributions to the plan.  Although Husband submitted the pertinent exhibit, the master failed to calculate the respective shares of the pension using the updated evidence.  However, the trial court granted Husband's exception, reasoning "if the record was left open for [Husband] to submit an additional statement showing non-marital contributions, the [m]aster meant to rely on this information." Trial Court Opinion, 8/19/22, at 11.  It continued, "The purpose of the exhibit was to provide a more precise calculation of [Husband's] non-marital portion of his interest in the [s]avings [p]lan.  Even if the master intentionally disregarded the evidence provided after the conclusion of the hearing, the trial court was within its discretion to utilize this evidence." ***Id***.  For the following reasons, we do not discern an abuse of discretion in the trial court's decision to consider evidence that the

master overlooked, regardless of whether the omission was inadvertent or intentional.

It is well-settled that the trial court is not bound by the master's report or recommendation. **Carney**, 167 A.3d at 131. Indeed, the master's report "does not come to the court with any preponderate weight or authority which must be overcome. The reviewing court must consider the evidence, its weight and the credibility of the witnesses, *de novo*. The [m]aster's report is not controlling, either on the lower court or on the appellate court." **Rothrock v. Rothrock**, 765 A.2d 400, 404 (Pa.Super. 2000); **see also Snyder v. Snyder**, 275 A.3d 968, 976 (Pa.Super. 2022) ("[A]lthough the master's report is entitled to great weight, the final responsibility of making the distribution rests with the trial court.") (cleaned up).

Here, the master expressly held the record open so Husband could provide a statement updating his contributions and account balances from the Bechtel retirement account. **See** N.T., 11/2/21, at 8-9. Upon receipt of that document, Husband's counsel informed Wife and the master by email of its inclusion and advised, "with that as our final exhibit, the record should now be complete." **See** Husband's Exceptions to Master Report, 2/4/22, at Exhibit A. Once it became clear that the master had omitted the updated figures from the report submitted to the trial court, Husband subsequently attached the document and above-mentioned correspondence as an exhibit to the exceptions he filed to that report. **Id**. Wife did not object to the decision to

hold the record open or admit the document into the record once Husband confirmed its receipt. Indeed, even in replying to Husband's exception, Wife did not object to the document. Instead, she argued, "our response to the retirement information is fairly simple. We do not believe that the master is obligated to follow the number in which the Husband and counsel wish for him to follow." N.T., 4/11/22, at 11.

Insofar as the trial court neither erred nor exercised unreasonable judgment in relying upon the master's decision to hold the record open for Husband to submit the updated information, we do not disturb it. **Carney**, 167 A.3d at 131. Just as Wife argues that the master was not bound to agree with evidence that Husband ultimately provided, the trial court was not bound by the master's apparent disregard of it. **See Rothrock**, 765 A.2d at 404; **Snyder**, 275 A.3d at 976.

Next, we confront Wife's assertion that the trial court erred in granting Husband credit for the post-separation mortgage payments on the marital home. The following tenets inform our review. The trial court may award credits to a party in equitable distribution for the payment of mortgage and taxes to the spouse who does not have the use and occupancy of the real estate during separation. However, credit is not mandatory and may be denied as long as the total distribution scheme is equitable. **Middleton v. Middleton**, 812 A.2d 1241 (Pa.Super. 2002) (*en banc*) (credit denied where payments were voluntary and credit would result in economic injustice);

***Schmidt v. Krug***, 624 A.2d 183 (Pa. Super. 1993) (credit denied where both spouses had access to the property).

Instantly, the trial court adopted the master's report crediting Husband $43,773.12, which is approximately forty-one percent of the $106,000 Husband claimed to have paid to preserve the marital home since the 2016 separation.[2]  N.T., 4/11/22, at 9.  Thus, rather than reimbursing Husband for the full amount he actually paid toward the mortgage principal, the master fashioned an award that aligned with Husband's share of the sixty-forty equitable distribution scheme.

Highlighting her fiscal problems throughout the separation, Wife contends that because Husband sought exclusive possession of the marital residence, he was responsible for maintaining the marital asset even though he did not reside in the home.  Wife's brief at 20.  She phrases her argument thusly:  "[R]ewarding Husband with a credit for paying . . . down the balance on the mortgage on a vacant house while [she] slept in a car sets a dangerous precedent in divorces."  ***Id***. at 21; ***see also id***. at 19 (arguing that the credit "rewards predatory tactics by the party of a divorce that has greater earning capabilities.").

---

[2] The master calculated the credit by awarding the difference between the principal at the time of separation, $282,592.20 and the amount used to pay off the mortgage following the sale, *i.e.*, $238,819.08.

Noting that Wife acquiesced to Husband's exclusive possession because she could not afford to maintain the home or pay the mortgage, the trial court rejected Wife's value-based position on its face. It concluded, "We do not believe awarding [Husband] credit for the mortgage payments sets a dangerous precedent, as [he] continued to maintain the marital asset even though he did not reside in the home and continued to make timely mortgage payments." Trial Court Opinion, 8/19/22, at unnumbered 8.

We do not discern an abuse of discretion. In contrast to a typical case involving a dispossessed spouse's request to receive credit for post-separation mortgage payments made on property that the dispossessed party could not access, Husband was granted post-separation possession of the property specifically because Wife was not able to maintain it. *See*, *e.g.*, *Middleton*, 812 A.2d 1241; *Schmidt*, 624 A.2d 183 (credit denied where both spouses had access to the property). Nevertheless, the central tenet of those cases, effectuating economic justice between the parties, applies equally under the facts of the case at bar, where Husband assumed the financial obligation specifically to preserve the marital asset pending equitable distribution. The trial court determined that the partial credit was fair under these circumstances, and we defer to the trial court's judgment. Plainly, the court's decision to grant the credit was a reasonable exercise of discretion in fashioning the overall equitable distribution scheme that awarded Wife sixty percent of the marital estate.

Wife's final two issues relate to the division of Husband's military pension pursuant to the Uniformed Services Former Spouses' Protection Act ("USFSPA"). First, she challenges the trial court's application of Section 1408(a)(1) of USFSPA, which, *inter alia*, restricts the manner that the disposable retired pay in a military pension can be divided with a non-military spouse.

We begin with a primer on the USFSPA. The statute defines "disposable retired pay" generally as "the amount of retired pay to which the member would have been entitled using the member's retired pay base and years of service on the date of the decree of divorce, dissolution, annulment, or legal separation." 10 U.S.C. § 1408(a)(4)(B). The USFSPA distinguishes between total monthly retired pay and disposable retired pay because the latter excludes specific deductions, such as amounts of retired pay waived to receive disability benefits and the premium for survivor benefit plan coverage, which we discuss *infra*. **See** 10 U.S.C. § 1408(a)(4)(A)(i-iv).

As it relates to the case at bar, the USFSPA authorizes states to divide disposable retired pay in equitable distribution as follows:

> (c) Authority for court to treat retired pay as property of the member and spouse.—(1) Subject to the limitations of this section, **a court may treat disposable retired pay payable to a member . . . either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court**.

10 U.S.C. § 1408(c)(1)(emphasis added). Pennsylvania classifies disposable retired pay as marital property that is subject to equitable distribution. *Morgante v. Morgante*, 119 A.3d 382, 387 (Pa.Super. 2015).

While § 1408(c)(1) confirms that disposable retired pay is a divisible marital asset, pursuant to § 1408(e)(1), "[t]he total amount of the disposable retired pay of a member payable under all court orders pursuant to subsection (c) may not exceed 50 percent of such disposable retired pay." Thus, the statute limits direct government payments to former spouses to fifty percent of disposable retired pay.

Instantly, the master's report recommended dividing the marital portion of the military pension consistent with the global sixty/forty split of marital assets in favor of Wife. In arguing Husband's exceptions to the master's report, Husband's counsel informed the trial court that he contacted the DFAS retired pay center and the representative advised him that, regardless of the percentage awarded to an ex-spouse in a domestic order, DFAS will not pay out greater than fifty percent of the marital portion of the pension. *See* N.T., 4/11/22, at 6. Counsel reported the exchange as follows: "[The representative] just said look, we will not honor it if it's more than 50/50. And I said, but is that the marital portion, or is that the whole pension? And [the representative] said if we get an order that says more than [fifty percent] of anything, [Wife's] not getting it." *Id*. Upon review of Husband's exception, the trial court reduced Wife's share of the marital component to fifty percent.

On appeal, Wife asserts that the trial court erred in reducing the master's recommended distribution because Husband joined the military eight years prior to the marriage. As a result, approximately one-third of his disposable retired pay is non-marital property that is not subject to equitable distribution. Wife continues that since her sixty-percent share of the marital portion of the retirement pay is less than the fifty-percent maximum permitted by the USFSPA, the trial court erred in granting Husband's exception and altering the master's recommended award. For the following reasons, we agree.

In rejecting Wife's exception, the trial court implicitly adopted Husband's position, determined that USFSPA does not differentiate between marital and non-marital assets, and concluded, "based on [its] interpretation of the federal statute," it does not have "legal authority" to award Wife more than fifty percent of the marital share. This conclusion is legally erroneous.

Instantly, the pertinent sections of USFSPA are clear and unambiguous. Insofar as "disposable retired pay" refers to a service member's gross retired pay less the deductions authorized by § 1408(a)(4), the term necessarily includes both marital retirement pay **and** non-marital retirement pay that accrued before the marriage. Phrased differently, Husband's disposable retired pay is the gross amount of retired pay that he will receive **based on his total years of service** up until the date of separation. *See* 10 U.S.C. § 1408(a)(4)(b).

Husband's total disposable retired pay currently is $2,695.47 per month, and the marital portion of the monthly benefit is $1,927. Thus, Wife's sixty percent share of this marital asset equals $1,156.20 per month, which is approximately forty-three percent (42.894%) of the total disposable retired pay. Accordingly, it does not exceed USFSPA's fifty-percent limit on the distribution of disposable retired pay. Therefore, as Wife accurately asserted, while § 1408 limits direct payments to former spouses to fifty percent of disposable retired pay, the master's recommended distribution order directing payment of sixty percent of the marital share would **not** result in her receiving more than fifty percent of the gross pension. As Wife's sixty-percent share of the marital portion of the retirement via direct pay is less than the fifty-percent maximum permitted by the USFSPA, the trial court erred in granting Husband's exception and reducing that amount on the basis that USFSPA would not permit Wife to receive the full sum awarded.

Accordingly, we vacate the portion of the equitable distribution order that reduced Wife's recommended share of the marital portion of the military pension to fifty percent. As explained *supra*, the master's recommended distribution did not violate the fifty-percent maximum permitted by the USFSPA. To the extent that the trial court is concerned that DFAS will refuse to honor any order that purports to award more than fifty percent of the marital component, the trial court can simply fashion the award to give Wife $1,156.20 per month, an amount that equals both sixty percent of the marital

portion of Husband's disposable retired pay and roughly forty-three percent of the total disposable retired pay.

Wife's final issue concerns the trial court's decision to permit Husband to remove her from the survivor benefit plan ("SBP"). We start by outlining the pertinent background information. The SBP is an annuity plan under which a surviving beneficiary can continue to receive a monthly benefit following the death of a service member. **See** 10 U.S.C. §§ 1447–1455. A state court is authorized to require a service member to provide an SBP annuity to a former spouse as part of equitable distribution. **Id**. at § 1450(f)(4). When SBP is elected, the participating service member designates the former spouse as a primary beneficiary and surviving children as alternate beneficiaries.[3] **Id**. at § 1450(a). Pursuant to the plan, a beneficiary under sixty-two years of age receives fifty-five percent of the base amount of the pension for life.[4] **Id**. at 1451(a)(1)(A). The annuity payments generally cease upon the death of the spouse or former spouse, or their remarriage before reaching fifty-five years old. **Id**. at § 1450(b). Significantly, the cost of SBP is subtracted from

---

[3] SBP coverage for a former spouse is not automatic, and it must be affirmatively elected. **See** 10 U.S.C. § 1448(b)(2), (b)(3)). Furthermore, designating a former spouse as the beneficiary precludes the designation of a current, future, or any other former spouses as additional beneficiaries. **Id**. § 1448(b)(2)(B), (C).

[4] In this context, "base amount" is defined as the gross amount of monthly retired pay. **See** 10 U.S.C. § 1447.

the service member's gross pay **before** calculating the net disposable retired pay that is subject to equitable distribution. *Id*. at § 1408(a)(4)(D). Hence, the parties share the cost of survivor benefits in the same proportion as their respective share of the disposable retired pay that we discussed *supra*.[5] The premiums for participation in the SBP program are withheld from the monthly payment of the respective retirement benefits. *Id*. at § 1452. Finally, if a service member is required by court order to provide an SBP annuity to a former spouse and he fails or refuses to make such an election, the member shall be deemed to have made such an election upon the written request from

_____

[5] Brett R. Turner explained this dynamic in his treatise Equitable Distribution of Property:

> For example, assume that the service member's benefit is $3,000 per month, that the survivor annuity deduction is $200 per month, and that the benefit is divided equally between the spouses. Under the present statute, the service member's disposable retired pay is $2,800 per month, and each party receives $1,400 per month. Since each party would receive $1,500 per month if no survivor benefit had been elected, federal law has forced the parties to share the $200 cost in the same ratio as they are sharing the retirement benefits—in this hypothetical situation, equally.

2 BRETT R. TURNER, EQUITABLE DISTRIBUTION OF PROPERTY, § 6:46 at n.9 (4thed. 2024 January Update). Instantly, awarding Wife SBP would carry an expense of $231.76 per month that would be deducted from Husband's retirement before calculating the monthly disposable retired pay, currently $2,695.47, that is subject to equitable distribution, less the non-marital component. Thus, contrary to the assertions that Husband alone would bear the cost of the SBP, Wife would share in any reduction of the net retirement benefits and have a proportionate amount withheld from her monthly benefit. *See* 10 U.S.C. §§ 1408(a)(4)(D), 1452.

the former spouse and a copy of the court order within one year of the date of such court order. *Id*. at § 1450(f)(3)(A),(C).

Instantly, the divorce master recommended, without explanation, that the equitable distribution order relieve Husband of the obligation to elect SBP and designate Wife as the beneficiary pursuant to § 1450(a) and (f)(4). The trial court adopted this aspect of the master's recommendation and, in denying Wife's ensuing exception, it reasoned as follows:

> We do not believe that permitting [Husband] to remove the SBP was in error. Even without the SBP, [Wife] will receive a substantial amount of the military pension and equitable distribution. Thus, there is certainty that [Wife] will continue to benefit from the marital asset. Additionally, the SBP is subject to change regardless of the [c]ourt's decision since the SBP can be impacted by numerous factors other than [Husband]'s death, such as if one of the parties remarries or [Husband]'s disability. These other factors which can affect the SBP lead this [c]ourt to believe that new entanglements could arise by requiring [Husband] to keep the SBP. If [Husband] were to remarry and designate his new wife as the beneficiary, this would certainly lead to entanglements between the parties.
>
> [Wife] has and will, with absolute certainty, continue to benefit from Husband's military pension. [Wife]'s argument for keeping the SBP is merely circumstantial and [Husband]'s SBP is subject to change, meaning that it was never completely certain. Allowing [Husband] to remove the SBP was not in error.

Trial Court Opinion, 8/19/22, at unnumbered 7.

Wife argues that the trial court erred in rejecting her exception. First, she accurately highlights that by refusing to order Husband to designate her a beneficiary of SBP benefits, her rights to Husband's pension are far from

guaranteed and, indeed, will terminate with his death.[6] Wife's brief at 15-17. Noting that the trial court previously acknowledged that the SBP was essentially an insurance policy for that marital asset, Wife continues that the trial court misapprehended the law by concluding that her access to the asset was certain and focusing on perceived entanglements between Husband and Wife if it required Husband to elect the SBP benefits. Finally, Wife invokes the public policy argument that the court's decision to forgo insuring that she will realize her share of the retirement benefits creates financial uncertainty. *Id*. at 18. She phrases her position thusly, "Wife should have the security of knowing the largest asset of the marriage is protected by requiring Husband to continue to have Wife named [as a beneficiary] on the SBP." *Id*. at 18.

---

[6] Husband does not confront Wife's argument directly. Instead, he adopts the trial court's position that the marital portion of his military retirement benefit is certain because it is already in pay status. *See* Husband's brief at 5-6 (arguing Wife "already benefited from same and will continue to do so under the terms of the [equitable distribution o]rder."). Ironically, while Husband discounts the effect of his death on Wife's access to her share of the marital asset, one of the reasons that he raises for objecting to the SBP is "his complete disdain for [Wife] having a financial interest in his death." *Id*. at 4.

In addition, while Husband accurately highlights that Wife's share of the marital component is approximately forty-three percent of the total disposable retired pay but the SBP benefit will award her up to fifty-five percent of the asset if Husband dies, we reject Husband's related assertion that this discrepancy is sufficient grounds to completely divest Wife of her share of the military pension upon his death. *Id*. at 4-5. Instead, if it is deemed necessary to resolve this difference, the fairest course is for the trial court to adjust the equitable distribution scheme to account for the contingency if it arises.

- 23 -

As explained below, we find that the trial court erred in permitting Husband to eliminate the protections afforded by the SBP. The trial court's reasoning has two interwoven facets: (1) Wife's access to the asset is certain; and (2) requiring Husband to elect the SBP will prolong entanglements between the parties. Both viewpoints are flawed.

Instantly, the trial court adopted the master's recommendation to award Wife sixty percent of the marital estate, and the marital component of the military pension as one of the largest assets. Husband received a proportionate share of the pension and other marital assets to balance the equitable distribution. However, because the marital estate lacked sufficient liquid assets to provide Wife an immediate offset of her share of the retirement in a lump sum, the court directed that Wife collect her proportionate share of the pension in monthly payments directly from DFAS. Thus, the parties' interest in the asset are necessarily entwined and insofar as the monthly pension payments are directly contingent upon Husband's continuing vitality, Wife's ability to receive her proportionate share of the equitable division through the deferred distribution of the pension is dependent on her continued access to that resource. Hence, not only is the trial court's "certainty" concerning Wife's sustained ability to access this marital asset misplaced, its preoccupation with potential future entanglements between Husband and Wife also misses the mark.

It is beyond argument that, absent the SBP, the monthly direct-pay pension benefits that Wife collects will cease automatically upon Husband's death. *See* 10 U.S.C. § 1408(d)(4) ("Payments [to a former spouse] from the disposable retired pay of a member pursuant to this section shall terminate in accordance with the terms of the applicable court order, but **not later than the date of the death of the member** or the date of the death of the spouse or former spouse to whom payments are being made, whichever occurs first." (emphasis added)). In fact, the precise purpose of the SBP that Wife seeks is to avoid that situation and to continue to provide her a monthly benefit if Husband dies. Thus, both the law and certified record belie the trial court's finding of "certainty that [Wife] will continue to benefit from the marital asset." Trial Court Opinion, 8/19/22 at 7.[7] Similarly, while the trial court never outlined its specific concern about future entanglements between the parties, we presume the court was referencing the fact that both parties would benefit from a total resolution of the economic issues if the marital estate permitted

---

[7] Relatedly, although the trial court accurately observed that the SBP is subject to either termination if Wife remarries or potential reduction if Husband increases his disability waiver, the court failed to explain how Wife's current rights to the asset are affected by the fact that those contingencies exist. The court simply reasoned that because the "SBP is subject to change, . . . it was never completely certain." Trial Court Opinion, 8/19/22, at unnumbered 7. Furthermore, the trial court's theory that Wife's SBP would be affected if Husband remarried and listed his new spouse as a beneficiary is incorrect. As discussed in note three of this opinion, pursuant to § 1448(b)(2)(B), and (c), Wife's designation as the beneficiary precludes the designation of a current or future spouse. Once designated as the SBP beneficiary, Wife's interest is virtually static, subject to some exceptions that are not relevant in this case.

it. However, as previously noted, the estate is insufficient for an immediate setoff and nothing in the record supports the court's position that denying Wife the benefit of the SBP will further the goal of a final, ultimate division of assets. Phrased differently, Husband and Wife are bound by their respective monthly pension payments regardless of whether Wife's marital interest is protected by the SBP.

As Wife's access to this military pension is decidedly conditioned on Husband's lifespan and because the ultimate equitable division of the marital assets is no less final with the selection of the SBP, the trial court erred in denying Wife's claim for relief on these two bases. Hence, we find clear and convincing evidence from the certified record which demonstrates that the trial court committed an abuse of discretion in misapprehending the facts and the law in permitting Husband to terminate the SBP and remove Wife as a beneficiary. *Busse*, 921 A.2d at 1257 (observing that an abuse of discretion is found upon a showing of clear and convincing evidence of, *inter alia*, "a misapplication of the law or failure to follow proper legal procedure."). Accordingly, we vacate the portion of the equitable distribution order allowing Husband to terminate the SBP and instruct the trial court to fashion an order that utilizes its authority to direct Husband to provide an SBP annuity to Wife as part of the equitable distribution scheme. *See* 10 U.S.C. § 1450(f)(4).

In sum, we do not disturb the trial court's decisions to deny Wife alimony, award Husband a $43,773.12 credit for post-separation mortgage

payments on the marital residence, or compute the marital component of the Bechtel retirement savings plan based on an exhibit the master held the record open to receive but neglected to consider. However, we vacate the distribution order insofar as it limits Wife's share of the marital component of Husband's military retirement benefits to fifty percent and permits Husband to eliminate or remove Wife from the SBP ensuring her equitable share of the military pension. We therefore remand for the trial court to fashion an equitable distribution award that is consistent with this opinion.

Decree affirmed in part and vacated in part. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 7/22/2024