J-S20031-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| KAREN CLOUSER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| MARK CLOUSER | : | No. 258 MDA 2024 |

Appeal from the Decree Entered February 20, 2024
In the Court of Common Pleas of Cumberland County
Civil Division at 2018-11868

| | | |
|---|---|---|
| KAREN CLOUSER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| MARK CLOUSER | : | |
| | : | |
| Appellant | : | No. 325 MDA 2024 |

Appeal from the Decree Entered February 20, 2024
In the Court of Common Pleas of Cumberland County
Civil Division at 2018-11868

BEFORE:  OLSON, J., LANE, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:                    **FILED JUNE 30, 2025**

In these cross-appeals, Karen Clouser (Wife) and Mark Clouser (Husband) appeal from the divorce decree and disposition of their respective equitable distribution claims, as well as Wife's claim for alimony.[1]  After careful review, we affirm.

---

[1] This Court consolidated the appeals *sua sponte* on June 14, 2024.

CASE HISTORY

The parties are in their mid-60s.[2]  They were married, each for the second time, in July 1993.  They had no children, and separated after 25 years of marriage.  The trial court explained:

> The instant divorce matter was commenced by [Wife's] filing of a complaint on November 19, 2018.  By [o]rder … dated October 4, 2019, Ethan Stowell, Esquire was appointed as Divorce Hearing Officer (hereinafter "DHO") to resolve the pending economic claims.  Following hearings on June 15, 2021, September 28, 2021, November 23, 2021, and February 8, 2022, the DHO issued a Report and Recommendation on June 6, 2022.

Trial Court Opinion (TCO), 4/30/24, at 1.

The DHO found the value of the marital estate to be $506,216.00, and recommended that it be distributed 55% to Wife and 45% to Husband.  *See* Report and Recommendation (Report), 6/6/22, at 21.  The DHO further recommended that Husband pay Wife alimony of $1,100.00 per month for ten years.  *Id.* at 29.

In his Report, the DHO recited the parties' 16 stipulations to values of certain marital assets, followed by the DHO's findings of fact.  *Id.* at 1-3.  Pertinently,

> Husband is … employed as a truck driver[, and] claims he does not plan to retire anytime soon.
>
> In 2020, during the COVID-19 global pandemic, Husband earned approximately $46,276.00.  As of November of 2021, Husband had earned approximately $69,500.00.

---

[2] Husband states that the parties "are now 64 years old."  Husband's Brief at 17.

Husband has claimed expenses in the amount of $2,421.62 per month.

Husband is a high school graduate from a vocational technical school.

Wife … has been deemed totally disabled by social security. Her last job was approximately 12 years ago when she worked as a dental [assistant]. She currently receives $1,092.00 per month in spousal support and $1,064.60 per month in social security.

Wife's claimed monthly expenses include approximately $1,000.00 per month in rent, as well as costs associated with groceries, trash, water, electric and phone services.

Wife is a high school graduate.

Husband has diabetes and high blood pressure. He has also experienced multiple major health events over the past few years. Most recently, Husband made a full recovery after having major back surgery in July of 2021, which kept him out of work until October 2021. In the middle of October 2018, Husband broke his ankle in two places while working on the deck of the marital residence and required a boot cast in order to heal. Furthermore, in late September 2018, Husband checked himself into a hospital for mental health reasons after an incident in which he threatened to kill himself while holding a gun in front of Wife.

Wife currently suffers from both physical and mental health issues. She is totally disabled and has a significant bone disease (osteoporosis), which has caused her to have several fractures and other problems. She also has spinal stenosis and herniated discs. Furthermore, she claims to have significant post-traumatic stress disorder (PTSD), as well as other emotional issues.

*** 

Husband has two retirement assets. One of them is [an] IRA account, which has a stipulated marital value of $203,476.49, as of November 30, 2021.

Husband's second retirement asset is a … 401k plan…. If the date of separation is October 5, 2018, the marital value is $20,372.57. If the date of separation is October 27, 2018, the marital value is $20,878.93.

Wife has two retirement assets. One of them is her … IRA account, which has a stipulated marital value of $119,818.78, as of November 30, 2021. The other is her … Roth IRA account, which has a stipulated marital value of $39,782.32, as of November 30, 2021.

The parties had a joint Member's 1st account … that had a stipulated value of $142,697.00, as of the date of separation. This account was used by the parties to pay joint expenses until it was ultimately depleted through interim pre-distributions of funds to each party. The pre-distribution amounts totaled approximately $116,225.00, when rounded to the nearest whole dollar value. Additionally, Wife retained $7,637.49 which she claims belongs to her sister. The [DHO] assumes that the difference between the stipulated value and the distribution values of $18,835.00 was spent on joint expenses.

Over the course of the marriage, the parties maintained a comfortable middle-class lifestyle living within their means and without accumulating significant debt. Husband stated that during the marriage the parties did not travel or purchase expensive items[,] but would go out to eat two times a week.

Wife remains in possession of a 2007 Jeep Liberty Limited. … Using the Kelley Blue Book values for trade in and private party sale, and claiming approximately 90,000 miles on the car, Wife's position is that the 2007 Jeep Liberty Limited is worth $5,290.00. Using only the Kelley Blue Book private party sale value and claiming 78,000 miles on the car, Husband asserts that the 2007 Jeep Liberty Limited is worth between $6,224.00 and $8,099.00.

The parties dispute the value of a 2003 Chrysler Sebring. Husband was in possession of the Sebring when it was totaled, and he received an undisclosed amount from his insurer for the car. Now, using the Kelley Blue Book trade in value, Husband's position is that the value of the Sebring is $345.00. Using a different valuation though the Kelley Blue Book, Wife's position is that the Sebring should be valued at $1,198.50.

Husband was also previously in possession of a 1999 Dodge Ram. Husband sold this truck for $1,500.00. Using the Kelley Blue Book values for trade in and private party sale, Wife's position is that the 1999 Dodge Ram was worth $1,811.00. Husband used the Kelley Blue Book private party sale value to assert that the truck was worth between $1,027.00 and $3,148.00.

The parties sold the marital residence on May 13, 2019, for $280,000.00. The proceeds of $250,308.29 are being held in escrow.

Wife claims she contributed to the marriage by taking care of all the finances, the cooking, the cleaning and everything else in the household. Husband claims he contributed by doing outside chores, such as chopping wood, mowing grass and maintaining the vehicles.

\*\*\*

Wife alleges that Husband verbally and physically abused her over the course of the marriage.

On November 1, 2018, Wife filed a Petition for a Protection from Abuse (PFA) against Husband. A final PFA order was "entered by agreement without an admission" in favor of Wife, which excluded Husband from the marital residence and prohibited him from contacting her except to discuss joint finances or property.

Wife continued to live in the marital residence until it was sold on May 13, 2019.

The majority of the personal property belonging to the parties was sold at auction with each party retaining the specific items that they wanted. Because Husband was excluded from the marital residence by [the] PFA [o]rder, Wife was responsible for dealing with the items that neither party chose to retain.

The total proceeds from the personal property sold at auction was $12,710.88. Wife has not yet distributed any proceeds to Husband.

Some personal property was not sold at auction and Wife gave this property to friends who assisted her with the auction. Husband asserts that he did not consent to these gifts and that Wife should be considered to have retained them in distribution.

Wife acknowledges that she took possession of the 2018 [f]ederal [i]ncome [t]ax refund in the amount of $5,011.00.

Wife is requesting either full or half credit for several bills that she paid for a period of time both before and after the parties separated their joint account.

Husband claims that he is entitled to fair rental value of the marital residence for the period of time when Wife alone had possession

of the home prior to the time of sale. Wife asserts that Husband's fair rental value claim is precluded by the PFA Order which excluded him from the marital residence during that period when she alone had possession of the home.

Wife asserts that on February 1, 2018, she temporarily deposited $7,637.49 into the parties' Members 1st joint marital account…. Wife claims this money is not part of the marital estate, but rather belongs to her sister, originating from a … savings account that was set up when she was young. Husband's position is that the money should be considered part of the estate. Post-separation[,] Wife withdrew the $7,637.49 from the parties' joint account.

Both parties have incurred substantial debt as a result of litigating this divorce action.

***

Wife proposes that the marital [assets] be divided 75% to Wife and 25% to Husband. Wife proposes that each party keep their respective bank accounts as they have already been divided and that each party keeps their vehicles. Wife proposes that she keep the joint burial plots and that Husband keep the entire value of his pre-marital burial plot. Wife proposes that each party receive 50% of the cash value of the Genworth Life Insurance and that the 2018 [f]ederal [t]ax [r]efund be split 50-50. Wife further proposes that each party receive 50% of [Husband's] IRA and that she receive 100% of [her IRAs, and the parties'] joint account [with Raymond James]. Wife proposes that Husband retain 100% of [his 401(k)] account.

Wife is seeking $2,000.00 per month in alimony for an indefinite period. Wife also requests that Husband bear the costs of her legal fees and other costs involved with this divorce.

Husband originally proposed that the assets be divided 50-50…. He later revised his proposal to 55-45 in favor of Wife with no alimony being awarded to Wife.

*Id.* at 3-7 (paragraph numbers omitted).

Next, the DHO considered the equitable distribution factors set forth in 23 Pa.C.S. § 3502. The DHO cited the statute and case law in analyzing the factors relative to the parties' circumstances and claims. *See id.* at 7-21. As

stated above, the DHO valued the marital estate at $506,216.00, and recommended that it be distributed 55% to Wife and 45% to Husband. *Id.* at 21. The DHO specified that "Wife is entitled to $278,419.00 and Husband is entitled to receive $227,797.00 from these assets." *Id.* The DHO also considered the alimony factors set forth in 23 Pa.C.S. § 3701 in recommending that Wife be awarded ten years of $1,100.00 monthly alimony. *Id.* at 24-29.

After the DHO issued the Report,

> [both parties] filed timely exceptions…. Th[e trial c]ourt directed the filing of briefs and scheduled the matter for argument. Both briefs were timely filed and argument was held on October 14, 2022. Following argument, by [o]rder … dated October 17, 2022, th[e c]ourt remanded three exceptions to the DHO for correction and further analysis via a Supplemental Report and Recommendation. The DHO issued a Supplemental Report and Recommendation on March 21, 2023.

TCO at 1.

The trial court had ordered the DHO to consider the parties' three exceptions involving: 1) Wife's request for attorneys' fees; 2) any tax ramifications from the alimony award; and 3) any impact Husband's back injury and reduced income may have on equitable distribution. *See* Order, 10/17/22; *see also* Supplemental Report, 3/21/23, at 2. After considering the exceptions and evidence, the DHO continued to recommend "a 55-45 distribution of assets in favor of Wife." Supplemental Report at 6. The DHO also confirmed his recommendation that Wife be awarded ten years of $1,100.00 monthly alimony, "subject to modification and termination on

- 7 -

petition of either party" as provided in the Divorce Code. *Id.* at 7-8. The parties did not file exceptions to the Supplemental Report.

On October 23, 2023, the trial court "overruled the remaining exceptions and adopted the DHO's Report and Recommendation, as amended by the Supplemental Report and Recommendation."[3] TCO at 1-2. A divorce decree was entered on February 20, 2024, and both parties filed timely appeals. The parties also filed Pa.R.A.P. 1925 concise statements which reflect the issues they raise on appeal.

Wife presents two issues:

1. Whether the trial court erred as a matter of law or abused its discretion by denying [Wife's] exception thereby awarding her alimony of $1,100.00 per month for a period of ten (10) years when the record supported a longer duration, and a means of securing the award given the parties' ages, or in the alternative, a higher amount?

2. Whether the trial court erred as a matter of law or abused its discretion by denying [Wife's] exception thereby awarding her only 55% of the marital estate in equitable distribution when the record supported a higher percentage?

Wife's Brief at 4.

Husband presents three issues:

[1]. Whether the trial court erred as a matter of law and/or abused its discretion in denying Husband's exception and adopting the [DHO's] recommendation to award alimony of $1,100 per month for ten (10) years to Wife when alimony in that amount and for that duration was not necessary or appropriate and when a proper

---

[3] The trial court stated that it did not know the Supplemental Report had been filed until Husband's counsel "emailed on January 16, 2024, to inquire about the case status." TCO at 1 n.1.

analysis of all of the alimony factors pursuant to 23 Pa.C.S. § 3701 was not completed?

[2]. Whether the trial court erred as a matter of law and/or abused its discretion in denying Husband's exception and adopting the [DHO's] recommendation that Husband should not be awarded fair rental value for the period of time Wife resided in the marital home after separation from October 5, 2018 until the date the property was sold on May 13, 2019?

[3]. Whether the trial court erred as a matter of law and/or abused its discretion in denying Husband's exception and adopting the [DHO's] recommendation finding that the personal property of the marriage retained by Wife had a value of zero?

Husband's Brief at 6-7.

DISCUSSION

Both parties challenge the trial court's alimony and equitable distribution awards. We address their equitable distribution claims first, as "alimony following a divorce is a secondary remedy[,] and is available only where economic justice and the reasonable needs of the parties cannot be achieved by way of an equitable distribution award." *Martin v. Martin*, 320 A.3d 113, 118 (Pa. Super. 2024) (citation omitted).

*Equitable Distribution*

The Divorce Code provides for equitable distribution "in such a manner that the court deems just after considering all relevant factors." 23 Pa.C.S. § 3502(a). Relevant factors include:

(1) The length of the marriage.

(2) Any prior marriage of either party.

(3) The age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties.

- 9 -

(4) The contribution by one party to the education, training or increased earning power of the other party.

(5) The opportunity of each party for future acquisitions of capital assets and income.

(6) The sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits.

(7) The contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as homemaker.

(8) The value of the property set apart to each party.

(9) The standard of living of the parties established during the marriage.

(10) The economic circumstances of each party at the time the division of property is to become effective.

(10.1) The Federal, State and local tax ramifications associated with each asset to be divided, distributed or assigned, which ramifications need not be immediate and certain.

(10.2) The expense of sale, transfer or liquidation associated with a particular asset, which expense need not be immediate and certain.

(11) Whether the party will be serving as the custodian of any dependent minor children.

*Id.*

This Court reviews the distribution of marital property for an abuse of discretion, which "is not found lightly, but only upon a showing of clear and convincing evidence." *Martin*, 320 A.3d at 120 (citation omitted). "In determining the propriety of an equitable distribution award, courts must consider the distribution scheme as a whole." *Id.* In particular:

We measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights.

- 10 -

> Moreover, it is within the province of the trial court to weigh the evidence and decide credibility and this Court will not reverse those determinations so long as they are supported by the evidence. We are also aware that a [DHO's] report and recommendation, although only advisory, is to be given the fullest consideration, particularly on the question of credibility of witnesses, because the [DHO] ha[d] the opportunity to observe and assess the behavior and demeanor of the parties.

*Id.* (citation omitted). Here, the DHO noted the "multiple hearing days before the DHO dealing with the voluminous issues in this case." Report at 3.

### 1. *55/45 Distribution of the Marital Estate*

Wife claims the trial court's award of equitable distribution "was based upon findings that were not supported by the facts of record, or in some instances, directly controverted by the facts of record." Wife's Brief at 28. Wife contends the trial court erred in adopting three erroneous findings by the DHO. First, she maintains that the DHO incorrectly concluded that both parties will likely owe substantial attorneys' fees. *Id.* at 24. Wife states that the evidence "makes clear that only [Wife] owed debts at the time of the hearing, not [Husband]." *Id.* Second, Wife assails the DHO's statement that he was "unaware of significant property possessed by either party outside of the marital estate." *Id.* at 25 (citation omitted). Wife claims that after the parties separated, Husband "purchased and furnished a house and [bought] several vehicles which remain nonmarital, and [he] continued to contribute to his 401(k), enjoying both the post-separation contributions by him and his employer and any increase in value on the account." *Id.* Third, Wife challenges the DHO's finding that Husband "was the primary earner who

- 11 -

contributed to the acquisition of the marital estate." *Id.* at 26. She states that she was employed "for the majority of the parties' marriage," and asserts that "her financial management skills were the reason [the parties] enjoyed the marital estate they did and were not in debt." *Id.* Wife argues:

> Matters pertaining to the parties' respective financial conditions, non-marital assets, and contributions to the marital estate are relevant to factors 3502(a)(3), (4), (5), (6), (7), and (10). Those factors all weigh in favor of [Husband] being in a superior economic position to [Wife], as he has more non-marital assets, no debt he testified to, and [Wife] made equal, if not superior, contributions to the marriage, and has limited opportunities for the acquisition of future assets or increased income. Given the clear and undeniable misapplication of the facts of record, and the DHO's reliance on facts that appear nowhere in the record, that directly implicate half of the factors the trial court must consider, it naturally follows that the analysis of the equitable distribution factors is deeply flawed to the extent it constitutes reversible error or, in the alternative, an error that warrants remand to the trial court with instructions.

*Id.* at 26-27.

At the outset, Husband observes that Wife "does not argue a specific higher percentage of the marital estate she believes she should have been granted." Husband's Brief at 24. He also refutes Wife's claims regarding the parties' debt, possession of non-marital property, and contributions to the marital estate. *Id.* at 25. Husband asserts that the record demonstrates both parties' "significant legal fees" given the years of litigation, including "multiple conferences and days of hearings," and the parties' exceptions. *Id.* at 25-26. Husband further argues that the evidence supports the DHO's findings that neither party possessed significant non-marital property, and that Husband

was the primary earner who contributed to the acquisition of marital assets. *Id.* at 26. According to Husband, "these few factors [Wife] believes are at issue were considered … in conjunction with all of the other equitable distribution factors." *Id.* Husband cites the trial court's determination that Wife's claims are "either inconsequential at best or factually incorrect at worst…." *Id.* (citing TCO at 3). We agree.

Wife raised these same "purported errors" in her exceptions. *See* TCO at 3. The trial court stated that it "carefully considered" Wife's claims before finding they were "either inconsequential at best or factually incorrect at worst, but in each instance, they did not lend any reason to believe that the DHO abused his discretion in fashioning an award." *Id.* The court added:

> [Wife was] no longer working and there was no dispute regarding her financial contribution to the marriage. Regarding the … current financial positions of the parties, the DHO specifically noted those issues in his recitation of the facts and there is no reason to believe he did not consider them to the extent they are relevant…. While the DHO does reference that both parties have likely incurred substantial attorney fees, there is no reason to believe that this was considered in the overall distribution scheme in an inappropriate manner.

*Id.* at 4. The record supports the trial court's reasoning and rejection of Wife's equitable distribution claims. Next, we consider Husband's equitable distribution claims.

2. *Wife's Occupancy of the Marital Home*

Husband argues that the trial court abused its discretion by failing to award him credit for Wife's post-separation occupancy of the marital home.

- 13 -

*See* Husband's Brief at 41-46.  Wife lived in the home from October 2018 until May 2019.  Husband cites the testimony he presented from a realtor, who "opined that the rental value of the home was $2,000 per month." *Id.* at 42.  Husband claims he was entitled to "half the rental value, which was $1,000 per month for 7 months, for a total of $7,000 … as part of [his] equitable distribution award." *Id.* at 46.

Throughout the litigation, Wife has maintained that Husband was not entitled to any credit because he was excluded from the marital home by a PFA order.  *See* Wife's Reply Brief at 12-18.  Husband disputed Wife's claim because the PFA order was "entered by agreement without an admission," and Husband did not waive his right to credit for the home's rental value.  Husband's Brief at 46.  The trial court explained its rejection of Husband's argument as follows:

> The DHO carried out a thorough legal analysis and, relying on *Lee v. Lee*, 978 A.2d 380 ([Pa. Super.] 2009), determined that the … PFA [order] precluding Husband from the residence was a meritorious equitable defense to his fair rental value claim.  Husband argued to the DHO and in exceptions that this case is distinguishable from *Lee* on the basis that Husband in the instant case entered into the PFA [order] by agreement without admission, while in *Lee* the PFA [order] was entered after an evidentiary hearing.  This argument was not persuasive to the DHO or to this [c]ourt.  Despite the manner of entry of the PFA [order], the result is still the preclusion of the Husband from the residence.  Furthermore, it is worth noting the DHO took testimony regarding marital misconduct, which included the events leading to the PFA [order].  Based on that testimony and the entry of a PFA [order,] it appears equitable … to decline to award fair rental value to the Husband.

TCO at 4-5.

As Husband acknowledges, the "award of rental value as part of equitable distribution is within the sound discretion of the trial court." Husband's Brief at 41 (citations omitted). Our review reveals no abuse of discretion.

3. *Personal Property*

Husband argues that the trial court erred by adopting the DHO's recommendation regarding personal property that remained in Wife's possession after the parties separated. Husband relies on an exhibit he introduced which listed property values based on Husband "searching on the internet, Craig's List, and classified ads to determine what it would cost to replace each item." Husband's Brief at 48 (citations omitted). The exhibit showed a "total estimated value of $7,000." *Id.* at 47 (citing Exhibit D5).

Wife counters that several of the items "were already included in the marital estate as part of the auctioned items, some were not accurate descriptions of the property owned by the parties, some items were non-marital, and some items she attempted to sell at auction but did not sell." Wife's Reply Brief at 19. Wife maintains that Husband "is not entitled to relief simply because the DHO did not find his unsubstantiated guesses of value to be credible." *Id.* at 22. She stresses that "credibility is properly within the province of the factfinder." *Id.* Wife is correct.

The trial court agreed with the DHO's decision not to impute a value to the property, noting that Wife retained the items because she remained in the home, and some property "was unwanted and given away by Wife just to be

- 15 -

rid of it." TCO at 5. The court also referenced "challenges with valuation" in concluding that "the DHO's recommendation of no marital value was appropriate." *Id.* We discern no error.

In sum, the record supports the trial court's conclusion that the DHO properly "accounted for the facts and circumstances of this case." *Id.* at 4. Therefore, the court did not abuse its discretion in adopting the DHO's recommendation regarding equitable distribution.

*Alimony*

Both parties challenge the trial court's award of alimony to Wife of $1,100 per month for ten years. Wife argues "the amount, duration, and the lack of life insurance or other means to secure the award" is insufficient to meet her reasonable needs. Wife's Brief at 28. Wife does not specify an amount that would be sufficient, but claims she is "unable to provide for her necessities of life without an indefinite alimony obligation." *Id.* at 18. Wife also argues that Husband should be required to obtain life insurance as "a means to secure" Wife's alimony, because if Husband dies, Wife would only receive income from social security. *Id.* at 20. Wife seeks to be "protected in the event [Husband] were to pass, as his passing would inevitably shorten the duration of the award." *Id.*

Initially, Husband argues that Wife waived her claims regarding indefinite alimony and life insurance because she failed to raise the claims in

her exceptions before the trial court.[4] *Id.* at 19-20. While we are not inclined to find waiver, Husband also argues that the trial court did not abuse its discretion in declining to award indefinite alimony or require Husband to obtain a life insurance policy to protect the alimony award. *Id.* at 20.

Husband further claims Wife should not receive any alimony. *See id.* at 13. In the alternative, he claims the award was "too high an amount of alimony and for too long a duration." *Id.* at 20. Husband contends the trial court erred in adopting the DHO's alimony recommendation because the DHO "failed to properly analyze" the alimony factors "thoroughly in detail[,] and incorrectly applied the facts presented to each factor as required by Section 3701(b)." *Id.* at 27. Husband revisits the parties' testimony in claiming the evidence "did not support a reasonable need for alimony" and Wife's "reasonable needs could be met through … equitable distribution." *Id.* at 39-40. Our review reveals no reason to disturb the trial court's alimony award.

This Court will reverse an alimony award "where there is an apparent abuse of discretion or there is insufficient evidence to support the award." *Cook v. Cook*, 186 A.3d 1015, 1019–20 (Pa. Super. 2018) (citation omitted).

---

[4] Wife argues she did not waive the claims because 1) she requested indefinite alimony at trial and claimed in her exceptions that the recommended ten years was an abuse of discretion; and 2) in her exceptions, Wife "highlighted the likelihood [she] would not receive the full amount of alimony awarded based upon [Husband's] age, and suggested doubling the amount and reducing the duration," which is the "the exact same result [as] requiring Husband to obtain life insurance." Wife's Reply Brief at 2-3.

As noted above, alimony is a secondary remedy. ***Martin***, 320 A.3d at 118.

We have explained:

> An award of alimony should be made to either party only if the trial court finds that it is necessary to provide the receiving spouse with sufficient income to obtain the necessities of life. The purpose of alimony is not to reward one party and punish the other, but rather to ensure that the reasonable needs of the person who is unable to support herself through appropriate employment are met.
>
> Alimony is based upon reasonable needs in accordance with the lifestyle and standard of living established by the parties during the marriage, as well as the payor's ability to pay.

***Cook***, 186 A.3d at 1019–20 (citations and quotation marks omitted).

In deciding whether alimony is necessary, and to determine the amount and duration of alimony, the trial court must consider the factors set forth in 23 Pa.C.S. § 3701. The factors include:

(1) The relative earnings and earning capacities of the parties.

(2) The ages and the physical, mental and emotional conditions of the parties.

(3) The sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits.

(4) The expectancies and inheritances of the parties.

(5) The duration of the marriage.

(6) The contribution by one party to the education, training or increased earning power of the other party.

(7) The extent to which the earning power, expenses or financial obligations of a party will be affected by reason of serving as the custodian of a minor child.

(8) The standard of living of the parties established during the marriage.

(9) The relative education of the parties and the time necessary to acquire sufficient education or training to enable the party seeking alimony to find appropriate employment.

(10) The relative assets and liabilities of the parties.

(11) The property brought to the marriage by either party.

(12) The contribution of a spouse as homemaker.

(13) The relative needs of the parties.

(14) The marital misconduct of either of the parties during the marriage. The marital misconduct of either of the parties from the date of final separation shall not be considered by the court in its determinations relative to alimony, except that the court shall consider the abuse of one party by the other party. As used in this paragraph, "abuse" shall have the meaning given to it under section 6102 (relating to definitions).

(15) The Federal, State and local tax ramifications of the alimony award.

(16) Whether the party seeking alimony lacks sufficient property, including, but not limited to, property distributed under Chapter 35 (relating to property rights), to provide for the party's reasonable needs.

(17) Whether the party seeking alimony is incapable of self-support through appropriate employment.

23 Pa.C.S. § 3701(b).

Here, the DHO considered the alimony factors in concluding:

Wife's income and expenses demonstrate a monetary need. Husband's income exceeds his needs and expenses.

[T]here was sufficient evidence presented … regarding [Husband's] marital misconduct which might impact an award of alimony.

\*\*\*

Because of her lesser income[,] Wife lacks sufficient property to provide for her reasonable needs and should have a continued contribution from Husband for a period of time.

- 19 -

Wife is unable to work as she is 61 years old and totally disabled. Wife's earnings, considering her expenses, are currently insufficient to provide for her support.

Report at 25 (paragraph numbers omitted).

In adopting the DHO's recommendation, the trial court explained:

After a careful review of the DHO's initial and supplemental reports, this [c]ourt was satisfied that [the DHO] considered all the alimony factors and fashioned an alimony award that was appropriate given the facts of the case. While there have been alternative ways to award alimony as [Wife] suggests, nothing in the record causes this [c]ourt to believe that the award recommended by the DHO was an abuse of discretion.

TCO at 3.

We agree with the trial court's assessment. In addition to her social security income, Wife has received $278,419.00 in equitable distribution. *See* Report at 21.[5] Also, the Divorce Code provides that a payor's alimony obligation terminates when the payor dies "unless otherwise indicated in an agreement between the parties or an order of court." 23 Pa.C.S. § 3707. A court may "direct the purchase of, and beneficiary designations" on a life insurance policy, where "it is necessary to protect the interests of a party." *Id.* at § 3502(d). Here, the DHO and trial court were aware of the law and declined to award indefinite alimony or require that Husband secure the

---

[5] Wife's award includes bank accounts, auction proceeds, Wife's traditional and Roth IRAs, her life insurance and annuity policy, her car, and $50,771.00 from the sale of the marital residence. *See* Report at 21.

alimony award with a life insurance policy. In addressing a similar argument, this Court stated:

> [W]e do not agree … that an alimony award must reflect all contingencies. [T]he Divorce Code provides that any alimony order may be "modified, suspended, terminated, reinstated or a new order made" upon "changed circumstances." Should [a] party … become disabled, for example, a petition for modification can be filed to reflect changed circumstances. Furthermore, an award of alimony shall not extend beyond the payor's death, unless the parties have agreed otherwise.

***Teribery v. Teribery***, 516 A.2d 33, 36–37 (Pa. Super. 1986) (citations omitted).

The trial court adopted the DHO's alimony recommendation after "careful review of the DHO's initial and supplemental report and recommendation, and the associated law and facts." TCO at 5. The record supports the recommendation.

## CONCLUSION

The trial court did not err or abuse its discretion in ordering that the marital estate be distributed 55% to Wife and 45% to Husband, and awarding Wife ten years of $1,100.00 monthly alimony.

Decree affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 06/30/2025